UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

NIMKOFF ROSENFELD & SCHECHTER, LLP,     :   07 CV 7983 (DAB)

                         Plaintiff,     :

            -against-                    :

RKO PROPERTIES, LTD. and FIDELITY       :
INVESTMENTS,
                                        :
                         Defendants.
----------------------------------------x

DEFENDANT RKO PROPERTIES, LTD.'S
MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
<u>TO DISMISS THE COUNTERCLAIMS</u>

IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Defendant
RKO PROPERTIES, LTD.
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

TABLE OF CONTENTS

Preliminary Statement.. . . . . . . . . . . . . . . . . . . . . 1

Facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   The Underlying Action.. . . . . . . . . . . . . . 3

    B.   The Retention.. . . . . . . . . . . . . . . . . . 4

    C.   The 2005 Contingent Fee Arrangement.. . . . . . . 4

    D.   Nimkoff's Unprofessional Conduct. . . . . . . . . 5

    E.   Nimkoff's Breach of Subsequent Agreements.. . . . 6

    F.   This Action.. . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I    THE STANDARD FOR THIS MOTION. . . . . . . . . . . 9

    II   THE FIRST COUNTERCLAIM
          FOR BREACH OF DUTY
          IS SUFFICIENTLY STATED. . . . . . . . . . . . . . 10

    III  RKO'S CLAIM FOR BREACH OF CONTRACT
          IS NOT DUPLICATIVE. . . . . . . . . . . . . . . . 16

    IV   RKO HAS SET FORTH A VALID FRAUD CLAIM.. . . . . . 17

    V    IN THE ALTERNATIVE,
          LEAVE TO REPLEAD SHOULD BE GRANTED. . . . . . . . 21

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Defendant RKO Properties, Ltd. ("RKO"), by its attorney, Ira Daniel Tokayer, Esq., submits this Memorandum of Law in opposition to the motion of plaintiff, Nimkoff Rosenfeld & Schechter LLP ("Nimkoff"), to dismiss RKO's counterclaims.

<u>Preliminary Statement</u>

Nimkoff's effort to shroud its misconduct by seeking at the pleading stage to preclude RKO from asserting, proving and ultimately recovering on its counterclaims for breach of duty, breach of contract and fraud must be rejected. The claims as set forth in the Answer are sufficiently pleaded and perfectly cognizable. The claims arise out of Nimkoff's conduct in fraudulently inducing RKO to retain it; extracting an exorbitant fee through threats and misrepresentations; and fraudulently preventing RKO from terminating the relationship for cause. In addition, Nimkoff performed unprofessionally, placed its own financial interests above its client's interests and entered into agreements with RKO only to dishonor them, among other things.

The purported pleading deficiencies identified by Nimkoff must be rejected under the appropriate legal standard for motions to dismiss under Rules 12(b)(6) and 9(b). (Point I.) Contrary to Nimkoff's contention, the First Counterclaim sets forth separate and independent claims for legal malpractice (which relate to the manner in which Nimkoff handled the Underlying Action [hereinafter defined]) and claims for breach of fiduciary duty (which relate to the manner in which Nimkoff

interacted with RKO).  Nimkoff's contention that RKO has failed sufficiently to allege damages which were proximately caused by Nimkoff's conduct is without legal or factual basis.  Indeed, to the extent such damages are even necessary, RKO has indeed set forth factual allegations from which the damages which RKO suffered as a result of Nimkoff's conduct may be inferred.  Such damages include but are not limited to RKO's liability for excessive attorneys' fees, RKO paying unreasonable and unnecessary charges, RKO having to retain counsel to complete the services Nimkoff was supposed to perform and RKO having to resolve the Underlying Action for less than what RKO would have realized absent Nimkoff's misconduct, among other things.  (Point II.)

Nimkoff's contention that the Second Counterclaim sets forth a claim for breach of contract which is redundant of RKO's claims for breach of duty and legal malpractice is also without basis.  As will be demonstrated, the breach of contract claims arise out of separate and distinct post-retention agreements that Nimkoff repudiated to RKO's detriment.  (Point III.)  Finally, Nimkoff's knee-jerk motion under Rule 9(b) to dismiss the fraud claims for various and sundry purported deficiencies is meritless.  RKO has pleaded all the elements of a fraud claim with all of the specificity required under the rules of this Court.  (Point IV.)

2

In the event the court finds the pleadings in any way deficient, however, RKO would be entitled to, and respectfully requests leave to amend under Rule 15(a). Nimkoff cannot claim any undue delay, bad faith, dilatory motive or prejudice. Nor would such amendment be "futile," as demonstrated herein. (Point V.)

<u>Facts</u>

The facts consist of matter which may reasonably be inferred from the pleadings and matter which RKO would set forth in an amended pleading if the Court is inclined to grant plaintiff's motion, in whole or in part, with leave to replead.

A.    <u>The Underlying Action</u>

As Nimkoff notes (Pl. Mem., at 1), Nimkoff was retained to represent RKO in connection with an action entitled <u>RKO Properties Ltd. v. Shaya Boymelgreen, et al.</u>, bearing New York Supreme Court Queens County Index No. 29822/02 (the "Underlying Action"). That action involved RKO's claim that, in or about 2002, RKO found, structured, negotiated and prepared contracts to effect an agreed-to real estate transaction for the purchase of commercial property located in Queens, New York. The defendants in the Underlying Action reneged on the transaction by accepting an offer for over $1 million more for the same property; in effect, selling the same property twice. The Underlying Action was commenced on or about November 15, 2002, for, <u>inter alia</u>,

3

specific performance, breach of contract and tortious
interference with contractual relations.

B.    The Retention

In or about February 2003, Nimkoff was retained as
counsel in the Underlying Action.  RKO was induced to retain
Nimkoff in reliance upon Ronald Nimkoff's representation that the
Nimkoff firm could oppose a then-pending motion to dismiss for
approximately $10,000 to $15,000.  Nimkoff's fees were to be paid
to Nimkoff out of the ultimate recovery in the case.

C.    The 2005 Contingent Fee Arrangement

In fact, Nimkoff billed RKO approximately $80,000 for
the above services.  Thereafter, Nimkoff continued to overbill
RKO.  It charged fees which were excessive and expenses which
were unreasonable and not covered by the parties' agreement.
Some of the fees and expenses were the direct result of Nimkoff's
neglect and failure to perform in accordance with professional
standards.  For example and not by way of limitation, it is
alleged that Nimkoff drafted papers which were deficient and
factually erroneous, which RKO had to correct and which had to be
re-done at additional cost and expense to RKO.  Nimkoff also
waited until the last moment to file a substantive motion, which
resulted in a costly appeal of an Order (Kitzes, J.) declining to
extend the notice of pendency, among other things.  (See 31
A.D.3d 625, 818 N.Y.S.2d 918.)

4

On June 1, 2005, Nimkoff presented RKO with a bill for $1,000,432.68.  The bill was unreasonable and excessive and contained charges for un-agreed-upon expenses.  On June 9, 2005, immediately prior to the commencement of a settlement conference, Nimkoff used the bill to force RKO to enter into a different fee arrangement which provided Nimkoff with a fee of one-third of the recovery in the Underlying Action.  Ronald Nimkoff represented that his firm could and would immediately and unilaterally withdraw from representing RKO at the conference if RKO did not enter into the new agreement on the spot.  He also told RKO that RKO would not be able to find another attorney to represent it under the circumstances because the entire bill was a proper first lien against any recovery in the case.

D.    Nimkoff's Unprofessional Conduct

During Nimkoff's representation of RKO, it engaged in outrageous conduct unbecoming of members of the bar which fell far below professional standards.  In addition to the deficiencies noted above, Nimkoff failed to press the case forward and failed to conduct proper and necessary document and deposition discovery.  In addition, Ronald Nimkoff threatened, verbally abused and physically intimidated RKO's principal and exhibited disrespectful behavior towards adversaries and the court which prejudiced RKO's case.  Ronald Nimkoff also made misrepresentations to ensure that RKO not terminate the

5

relationship, including asserting that, if RKO terminated
Nimkoff's services, RKO would still owe plaintiff its one-third
fee above and beyond any amounts earned by successor counsel.

E.    Nimkoff's Breach of Subsequent Agreements

On or about June 18, 2007, in the midst of settlement
negotiations in the Underlying Action, Nimkoff agreed to
accept a total fee of $1,050,000 (minus monies RKO had placed in
escrow with Nimkoff) in full satisfaction of all amounts owed to
Nimkoff.  As evidence of the agreement, Nimkoff forwarded a
proposal to settle the Underlying Action to defendants' counsel
in the Underlying Action which RKO had expressly instructed
Nimkoff not to do unless Nimkoff agreed to the fee.  Thereafter,
placing its own financial interests ahead of its client's
interests, Nimkoff advised RKO that it sought more money and
would not honor its agreement.  At that time, at additional cost
to RKO, RKO was constrained to retain other counsel to negotiate
the settlement.[1]

Subsequently, on July 16, 2007, Nimkoff agreed in
writing to a total fee not to exceed 27% of the recovery, plus

---

[1]  Nimkoff was supposed to confirm this modification in
writing before divulging RKO's settlement position.  Nimkoff's
subsequent refusal to provide the writing rendered his delivery
of RKO's settlement position a breach of the attorney-client
privilege and a breach of fiduciary duty which harmed RKO in the
settlement negotiation.  Nimkoff has in writing admitted to this
agreement, but has sought to justify its failure to honor the
agreement by claiming that it was somehow mis-led.  This
allegation will be demonstrated to be without basis.

6

monies being held in escrow.  In reliance on the above as a worst case scenario, on July 17, 2007, RKO settled the Underlying Action for $4,250,000 to be paid to RKO and/or its principal on or before August 14, 2007.  This amount was substantially less than RKO's loss from the actionable conduct of the defendants in the Underlying Action as set forth in the Amended Complaint prepared by Nimkoff and, it will be demonstrated, less than what RKO would have realized absent Nimkoff's conduct.

Based upon the written July 16, 2007 agreement, Nimkoff would have been entitled to a total fee not to exceed $1,147,500.  However, Nimkoff again reneged on its agreement.  It also asserted a lien in the entire settlement amount even though it was not entitled to such a lien under the agreement and under law.  The defendants in the Underlying Action, citing Nimkoff's lien, failed to pay the settlement sum on August 14, 2007.  It will be established that the failure of the defendants to timely perform has resulted in a loss to RKO of over $2 million in today's market value.

On August 14, 2007, the defendants in the Underlying Action brought on a motion seeking to excuse their non-performance.  Nimkoff, persisting in asserting a lien in the full settlement amount, appeared on the return date but declined to represent RKO, invoking a financial conflict of interest and jeopardizing the settlement.  RKO was constrained to incur the

7

additional expense of retaining separate counsel to represent it at the hearing, which culminated in a Stipulation and Order which was negotiated over the course of an entire day.  The hearing resulted, _inter alia_, in $1,427,000 being placed in escrow (in addition to approximately $12,000 of RKO's money which Nimkoff was previously holding in escrow which has never been released) to secure Nimkoff's fee.  It should be noted that the escrowed amount is well in excess of the fee to which Nimkoff would be entitled even under the fraudulently-induced 2005 arrangement since it fails to take into account expenses paid by RKO to Nimkoff, Nimkoff's predecessor counsel and various third-party payees which must be deducted from the settlement amount before calculation of Nimkoff's one-third fee.[2]

The Underlying Action is still ongoing and RKO continues to incur fees and expenses relating thereto due to Nimkoff's failure to handle the matter.  Of course, any award to

---

[2]  Nimkoff claims that under the 2005 arrangement its fee was equal to one-third of RKO's recovery "less the amount paid to the Nimkoff firm for disbursements."  (Pl. Br., at 2.)  The agreement actually provides that the fee was one-third of RKO's recovery less any disbursements paid to Nimkoff and predecessor counsel, Davidoff & Melito.  In addition, during the representation, Nimkoff stopped advancing expenses to third parties as it was expressly obligated to, and insisted that RKO pay disbursements directly.  Nimkoff improperly takes the position - and took the same position before the state court judge - that RKO's payment of these expenses are _not_ to be deducted before calculating Nimkoff's one-third fee.  By misleading the court, Nimkoff has over $1.427 million in escrow to secure his alleged fee, further causing harm to RKO by tying-up funds to which Nimkoff is not rightfully entitled.

Nimkoff should be reduced by such fees and expenses.

F.    This Action

          This action was commenced on or about September 12,
2007.  RKO has denied the material allegations of the Complaint
and asserted affirmative defenses.  Counterclaims have also been
asserted for damages resulting from Nimkoff's breach of duty,
breach of contract and fraud.  This motion ensued.

ARGUMENT

I

THE STANDARD FOR THIS MOTION

          Fed. R. Civ. P. 8(a)(2) requires "a short and plain
statement of the claim showing that the pleader is entitled to
relief" in order to "give the defendant fair notice of what the
claim is and the grounds upon which it rests."  Bell Atlantic
Corp. v. Twombley, 127 S. Ct. 1955, 1965-66 (2006).  A pleading
must contain enough factual allegations to raise a right to
relief above the "speculative level."  Id.  When ruling on a
motion to dismiss, the court "must accept as true all of the
factual allegations set out in [the challenged pleading], draw
inferences from those allegations in the light most favorable to
[the pleader], and construe the [pleading] liberally."
Selmanovic v. NYSE Group, Inc., 2007 WL 4563431 (S.D.N.Y. Dec.
21, 2007).  Under this standard, RKO's counterclaims sufficiently
state a claim for relief.

9

II

THE FIRST COUNTERCLAIM
FOR BREACH OF DUTY
IS SUFFICIENTLY STATED

"A claim for breach of fiduciary duty against an attorney which is premised on the same facts and seeking the identical relief sought in the legal malpractice cause of action is redundant and should be dismissed.  Conversely, a cause of action for breach of fiduciary duty will be maintainable if based on different facts than the malpractice cause of action."  Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 16 Misc. 3d 1051, 843 N.Y.S.2d 749, 755-56 (Sup. Ct. N.Y. Co. 2007).

A claim of legal malpractice involves the failure of an attorney to exercise the care, skill and diligence commonly exercised by an ordinary member of the legal community which proximately results in damages to the client.  See, e.g., Iannarone v. Gramer, 256 A.D.2d 443, 682 N.Y.S.2d 84, 85 (2d Dept. 1998).  In addition, the attorney-client relationship is a "unique" fiduciary one, "imbued with ultimate trust and confidence," imposing obligations which "transcend those prevailing in the commercial market place."  Matter of Cooperman, 83 N.Y.2d 465, 611 N.Y.S.2d 465, 468 (1994).  The court has stated:

> The duty to deal fairly, honestly and with
> undivided loyalty superimposes onto the
> attorney-client relationship a set of special
> and unique duties, including maintaining

10

> confidentiality, avoiding conflicts of
> interest, operating competently, safeguarding
> client property and honoring the clients'
> interests over the lawyer's.

Id. "In light of the trust and confidence inherent in the

attorney-client relationship, the court may examine a retainer

agreement to ensure that it is not unreasonable or oppressive

[or] where it was wrongfully procured." Schweizer v. Mulvehill,

93 F. Supp. 2d 376, 402 (S.D.N.Y. 2000). Further, "attorneys are

subject to liability for breach of duty when they deceive or

defraud their clients." See Bullmore v. Banc of America

Securities LLC, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007). As the

court has stated:

> A common formulation for distinguishing
> between the factual bases for malpractice and
> fiduciary duty claims albeit not one
> discussed in the New York cases is that
> malpractice or negligence claims involve
> breach of the standard of care, while
> fiduciary duty claims involve breach of the
> standard of conduct. A similar formulation
> is that breach of fiduciary duty claims do
> not relate to the manner in which the
> attorney pursued the underlying case, but
> rather the manner in which the defendants
> interacted with their client.

Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 843

N.Y.S.2d at 757.  See also Macnish-Lenox, LLC v. Simpson, 17

Misc. 3d 1118(A), 2007 WL 3086028 (Sup. Ct. Kings Co. October 23,

2007).

    Here, some of the conduct of which RKO complains in the

First Counterclaim sound in legal malpractice, while some involve

a breach of fiduciary duty only. For example, Nimkoff's preparation of poorly-drafted papers, Nimkoff's neglect of deadlines and Nimkoff's failure to conduct discovery sound in legal malpractice. Nimkoff's threats, verbal abuse and physical intimidation, Nimkoff's excessive and unreasonable fee, Nimkoff's deception and fraud in procuring the representation and the one-third fee arrangement, Nimkoff's conduct in preventing RKO from relieving it for cause, Nimkoff's conduct in placing its interests ahead of its client's interests and Nimkoff's breach of the attorney-client privilege all sound in breach of duty. Whatever the nomenclature, all such claims are actionable and properly subsumed within the First Counterclaim.

Nimkoff argues that RKO has failed sufficiently to allege damages which were proximately caused by Nimkoff's conduct. With respect to the claims arising from a breach of fiduciary duty, where the remedy that is sought is forfeiture of compensation, no proof of damages is required. As the court has stated:

> Because of this special relationship, a breach of fiduciary duty may give rise to liability in the absence of damages. Therefore, an attorney who makes fraudulent misstatements of fact or law to his client or who fraudulently conceals pertinent information may be required to disgorge any ill-gotten gain even if the plaintiff sustains no direct economic loss. This is because the function of such an action, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for

12

> wrongs committed by the defendant but to
> prevent them, by removing from agents and
> trustees all inducement to attempt dealing
> for their own benefit in matters which they
> have undertaken for others, or to which their
> agency or trust relates.  (E.s.)

Schweizer v. Mulvehill, 93 F. Supp. 2d at 402.  The court in

Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker, 843

N.Y.S.2d at 762, stated that, to the extent there are cases which

imply otherwise, they involve situations not present here "where

the breach of fiduciary duty and malpractice are co-extensive."

Id.

        Moreover, RKO has alleged that Nimkoff's malpractice

and breach of duty resulted in actual monetary loss and damage.

Such damages "need not be specially pleaded but are recoverable

under a general allegation of damages" (36 N.Y.Jur 2d Damages, §

196).  In all events, the Answer contains factual allegations

from which such damages may reasonably be inferred, including RKO

having to pay (and Nimkoff having to disgorge) an excessive fee

and unreasonable and unnecessary expenses; RKO having to retain

counsel to complete the settlement and otherwise represent RKO in

the Underlying Action; and RKO recovering less than it would have

recovered but for Nimkoff's conduct.  At this stage, nothing more

is required.[3]

---

        [3]  See Caruso, Caruso & Branda, P.C. v. Hirsch, 41 A.D.3d
407, 837 N.Y.S.2d 734 (2d Dept. 2007) ("at this stage of the
proceedings, Hirsch need not establish actual damages, but is

(continued...)

Nor does the absence of a talismanic recitation that RKO's damages were "proximately caused" by Nimkoff's misconduct render the complaint deficient on this motion to dismiss.  As the court has stated:

> LeBoeuf claims that plaintiff's failure to recite in haec verba that it would have prevailed against Old Republic "but for" counsel's negligence renders the complaint deficient as a matter of law.  However, as this Court has had occasion to note, "The test on a motion to dismiss for insufficiency of the pleadings is not whether the plaintiff has artfully drafted the complaint but whether, deeming the complaint to allege whatever can be reasonably implied from its statements, a cause of action can be sustained."

Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae, 243 A.D.2d 168, 674 N.Y.S.2d 280, 285 (1st Dept. 1998).

None of the cases cited by Nimkoff are to the contrary. Leder v. Spiegel, 9 N.Y.3d 836, 840 N.Y.S.2d 8988 (2007); Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 835 N.Y.S.2d 534 (2007); Barnett v. Schwartz, _ A.D.3d _, 848

---

[3](...continued)
only required to set forth allegations from which damages attributable to the defendant's alleged malpractice might be reasonably inferred"); Kempf v. Magida, 37 A.D.3d 763, 832 N.Y.S.2d 47 (2d Dept. 2007) ("plaintiffs are not obligated to show, at this stage of the pleadings, that they actually sustained damages"); Lappin v. Greenberg, 34 A.D.3d 277, 825 N.Y.S.2d 18 (1st Dept. 2006) ("a pleading need only state allegations from which damages attributable to the defendant's conduct may reasonably be inferred"); Tenzer Greenblatt Fallon & Kaplan v. Ellenberg, 199 A.D.2d 45, 604 N.Y.S.2d 947 (1st Dept. 1993) ("defendant is not obliged to show, at this stage of the pleadings, that she actually sustained damages").

14

N.Y.S.2d 663 (1st Dept. 2007); <u>Magnacoustics, Inc. v. Ostrolenk,
Faber, Gerb & Soffen</u>, 303 A.D.2d 561, 755 N.Y.S.2d 726 (2d Dept.
2003); and <u>Between the Bread Realty Corp. v. Salans Hertzfeld
Heilbronn Christy & Veiner</u>, 290 A.D.2d 380, 736 N.Y.S.2d 666 (1st
Dept. 2002), are all cases where proximate cause was found to be
absent after a motion for summary judgment or trial.  None of the
cases resulted in a dismissal at the pleading stage.

The cases cited by Nimkoff where the court dismissed
claims on a motion directed at the pleadings are readily
distinguishable.  In <u>Federal Ins. Co. v. North American Specialty
Ins. Co.</u>, _ A.D.3d _, 847 N.Y.S.2d 7 (1st Dept. 2007), the
complaint was found deficient for the failure to plead an
attorney-client relationship.  In <u>Pellegrino v. File</u>, 291 A.D.2d
60, 738 N.Y.S.2d 320 (1st Dept. 2002), the allegation of an act
of malpractice which occurred before the attorney had commenced
representing the client was found not to be actionable.  In
<u>Stroock & Stroock & Lavan v. Beltramini</u>, 157 A.D.2d 590, 550
N.Y.S.2d 337 (1st Dept. 1990), the decision to proceed in court
rather than arbitrate was found to be deficient as a matter of
law.  None of these authorities stand for the proposition that
the failure to expressly plead "proximate cause" subjects the
claims to dismissal on a motion to dismiss.[4]

---

[4]  <u>Weil Gotschal & Manges, LLP v. Fashion Boutique of Short
Hills, Inc.</u>, 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004),

(continued...)

15

Thus, Nimkoff's request that the Court dismiss the First Counterclaim should be denied.

### III

### RKO'S CLAIM FOR BREACH OF CONTRACT IS NOT DUPLICATIVE

A breach of contract claim premised on an attorney's failure to exercise due care or abide by general professional standards may be duplicative of a legal malpractice claim. However, RKO's breach of contract claim is premised on: (i) RKO's payment of charges excluded by the parties' agreement; and (ii) Nimkoff's breach of its separate and subsequent agreements for fees in lieu of the 2005 arrangement which is the subject of Nimkoff's claim.  Thus, RKO's breach of contract claim is <u>not</u> based on Nimkoff's mishandling of the Underlying Action or its failure to exercise due professional skill, care and diligence and is not in any sense duplicative.  <u>See</u> <u>Savattere v. Subin</u> <u>Associates, P.C.</u>, 261 A.D.2d 236, 690 N.Y.S.2d 229 (1st Dept. 1999) (client found to have separately stated causes of action for legal malpractice, breach of contract, and fraud).

Here, too, Nimkoff's argument that damages are not sufficiently pleaded fails.  As noted above, damages "need not be specially pleaded but are recoverable under a general allegation

---

[4](...continued)
does not support Nimkoff at all.  There, the appellate court reversed the lower court for dismissing the complaint based on documentary evidence that the court found should not have been considered.

16

of damages." 36 N.Y.Jur 2d <u>Damages</u>, § 196. Damages attributable to Nimkoff's breach of contract may in all events be readily inferred to be the un-agreed-to amounts RKO paid and the difference between the fee to which Nimkoff agreed and the amount to which Nimkoff would be entitled under the original arrangement it seeks to enforce. <u>See</u>, <u>e.g.</u>, <u>Scott-Macon Securities, Inc. v. Zoltek Companies</u>, 2005 WL 1138476, * 17 (S.D.N.Y. May 12, 2005) ("the normal measure of damages for breach of contract is expectation damages - the amount necessary to put the aggrieved party in as good a position as it would have been had the contract been fully performed"), <u>aff'd</u>, 2007 WL 2914873 (2d Cir. Oct. 4, 2007).

Thus, Nimkoff's request that the Court dismiss the Second Counterclaim should be denied.

IV

<u>RKO HAS SET FORTH A VALID FRAUD CLAIM</u>

"To plead a prima facie case of fraud, the plaintiff must allege representation of a material existing fact, falsity, scienter, deception and injury." <u>Lanzi v. Brooks</u>, 54 A.D.2d 1057, 388 N.Y.S.2d 946, 947 (3d Dept. 1976), <u>aff'd</u>, 43 N.Y.2d 778, 402 N.Y.S.2d 384 (1977).

RKO's Answer states a claim for fraud under this standard. Specifically, the following are some of the misrepresentations set forth in the Answer upon which it is

17

alleged RKO relied to its detriment:

- that on or about February 3, 2003, at plaintiff's offices, Ronald Nimkoff represented to the President of RKO, Robert Herskowitz, <u>inter alia</u>, that he could oppose defendant's motion to dismiss for approximately $10,000 to $15,000;

- that on or about June 9, 2005, at the courthouse at 140 Grand Street, White Plains, New York, Ronald Nimkoff represented to Robert Herskowitz that he could immediately unilaterally withdraw from the representation of RKO;

- that in or about May 2006 at plaintiff's offices, and on other occasions, Ronald Nimkoff represented to Robert Herskowitz that if defendant relieved his firm as counsel, notwithstanding any amounts defendant would be required to pay other attorneys, Nimkoff would still be entitled to its full one-third fee.

These allegations of time, place, speaker and content satisfy the requirements of Fed. R. Civ. P. 9(b). <u>See</u> <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1127 (2d Cir. 1994); <u>DiVittorio v. Equidyne Extractive Indus. Inc.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987).

Nimkoff contends that the first misrepresentation cited above is not actionable. However, far from "promissory," the statement purported to be a representation of what Nimkoff believed at that time and it is a "hornbook principle" that

18

"statements of opinion may constitute actionable fraud where a present intent to deceive exists." <u>Magnaleasing, Inc. v. Staten Island Mall</u>, 563 F.2d 567, 569 (2d Cir. 1977). <u>See also</u> <u>Buccino v. Continental Assur. Co.</u>, 578 F. Supp. 1518, 1524 (S.D.N.Y. 1983) ("where one party has superior knowledge of the facts, his expression of opinion implies that he knows facts which support that opinion and that he is unaware of anything to the contrary").[5]

Nimkoff further argues that the allegation of fraud with respect to Nimkoff's bill rendered on June 9, 2005, is improperly alleged "upon information and belief." However, such allegations are sufficient where the facts underlying the allegation are peculiarly within the defendant's knowledge. <u>See</u> <u>DiVittorio v. Equidyne Extractive Indus. Inc.</u>, 822 F.2d 1242, 1247 (2d Cir. 1987). Here, the belief is based upon the $1

----

[5]     Even a promissory representation may be actionable if it is made with the knowledge that the act will not be performed. As the court has stated: "While the representations related to something which was to occur in the future, we think the allegations in the complaint describe a case where a defendant has fraudulently and positively with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur." <u>Sabo v. Delman</u>, 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957). Nimkoff does not claim that the other misrepresentations are not actionable. Indeed, an intentionally false opinion on a matter of law has been held actionable where a relationship of trust exists, as here. <u>See</u> <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 46 (2d Cir. 1991).

19

million charge contained in the bill which is excessive under the
circumstances and which Nimkoff would not disavow despite RKO's
written objections.  In all events, Nimkoff's broad claim that
the Third Counterclaim should be dismissed in its entirety
because of a deficiency in this one allegation is without any
merit.

Again Nimkoff argues that RKO has not sufficiently
alleged damages.  However, fraud "damages" need not be pleaded
with "specificity."  See, e.g., Andrew Farms v. Calcot, Ltd.,
2007 WL 2989540 (E.D. Cal. Oct. 10, 2007).  In all events,
rescission and money damages consisting of disgorgement of the
entire fee that Nimkoff is demanding are remedies which may be
readily inferred from the detailed factual allegations of
Nimkoff's fraud.[6]

Nimkoff erroneously contends that a "disclaimer of
reliance on oral representations" contained in the agreement
precludes a claim for fraud in the inducement.  The language
cited by Nimkoff, however, evidences no such "disclaimer" and a

---

[6]  The cases cited by Nimkoff on this point are also
inapposite.  Shieldkret v. Park Place Entertainment Corp., 2002
WL 91621 (S.D.N.Y. Jan. 23, 2002), did not involve a motion
directed to the sufficiency of a pleading.  The district courts
in Weaver v. Chrysler Corp., 172 F.R.D. 96 (S.D.N.Y. 1997), and
Hawkins-El III v. AIG Savings Bank, 2006 WL 2008573 (E.D.N.Y.
July 13, 2006), aff'd, 2007 WL 642952 (2d Cir. Feb. 27, 2007),
did not rely on the failure to plead damages as the basis for
dismissal.  Finally, it cannot be ascertained from the brief
discussion in Wallace v. Crisman, 173 A.D.2d 322, 573 N.Y.S.2d
654 (1st Dept. 1991), whether the allegations in that case were
similar to the allegations herein.

"general merger clause" does not exclude parol evidence of fraud in the inducement.  See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 21 (2d Cir. 1997); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Group, LLC, 19 A.D.3d 273, 798 N.Y.S.2d 14 (1st Dept. 2005); Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957).

V

IN THE ALTERNATIVE,<br/>LEAVE TO REPLEAD SHOULD BE GRANTED

In the alternative, RKO respectfully requests leave to amend.  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."  As the High Court has stated: "this mandate is to be heeded."  Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962).  Indeed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

21

Id.  Accordingly, complaints are "almost always" dismissed with leave to amend.  Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 562 n. 6 (2d Cir. 1985), citing 2A Moore & Lucas, Moore's Federal Practice ¶ 9.03 at 9-34 (2d ed. 1984). See also Weaver v. Chrysler Corp., 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (Batts, J.) ("it is the usual practice upon granting a motion to dismiss to allow leave to replead").

Here, in the event the Court is inclined to grant plaintiff's motion, in whole or in part, RKO requests an opportunity to amend the Answer to cure any deficiencies in the claims for breach of duty, breach of contract and fraud and to assert additional claims, including claims under N.Y. Judiciary Law, 487, to the extent applicable.  RKO has not engaged in any undue delay in asserting its claims or exhibited bad faith or a dilatory motive.  Nimkoff cannot allege any "prejudice."  The amendment would not be "futile," as demonstrated herein.

While RKO has amended its Answer once as of right, the amendment was not made with notice of, or with the intention to cure any of the pleading deficiencies raised herein.  Thus, there has been no "repeated failure to cure deficiencies by amendments previously allowed."  Mitra v. State Bank of India, 2005 WL 2143144 (S.D.N.Y. Sept. 6, 2005) (Batts, J.).  Accordingly, it is respectfully submitted that no part of Nimkoff's motion should be granted without granting RKO leave to replead.  See Luce v.

22

<u>Edelstein</u>, 802 F.2d 49, 56 (2d Cir. 1986) ("dismissal of the complaint without granting leave to amend was an abuse of discretion"); <u>Nicolosi v. City of New York</u>, 2006 WL 3392736 (S.D.N.Y. Nov. 20, 2006) (Batts, J.) (leave to replead granted); <u>Glusband v. Fittin Cunningham Lauzon, Inc.</u>, 582 F. Supp. 145, 152 (S.D.N.Y. 1984) (negligence and fraud claims dismissed with leave to replead because "at oral argument, however, counsel for plaintiff informed the Court of additional facts which could be pleaded in a second amended complaint which might satisfy these requirements").

<u>Conclusion</u>

WHEREFORE, defendant respectfully requests that plaintiff's motion be denied in its entirety.

Dated:  New York, New York
        February 8, 2008

                              _____/s/_____
                              IRA DANIEL TOKAYER, ESQ. (IT-4734)
                              Attorney for Defendant
                              42 West 38th Street, Suite 802
                              New York, New York 10018
                              (212) 695-5250

MOT DISMISS CC MOL.wpd

23