UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NIMKOFF ROSENFELD & SCHECHTER,      :
LLP,
                                    :

              Plaintiff,            :      07 Civ. 7983(DAB)(HBP)

                                    :

      -against-                            REPORT AND
                                    :      RECOMMENDATION

RKO PROPERTIES, LTD., et al.,
                                    :

              Defendants.

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.  Introduction


          Plaintiff, Nimkoff Rosenfeld & Schechter, LLP

("Nimkoff"), commenced this action for breach of contract and

declaratory relief against defendants RKO Properties, Ltd.

("RKO"), and Fidelity Investments ("Fidelity"), pursuant to 28

U.S.C. § 1332.

          On December 16, 2009, your Honor held that defendant

RKO was entitled to attorney's fees and costs incurred in the

course of conducting jurisdictional discovery (Docket Item 56)

and referred this matter to me to conduct an inquest and to

report and recommend concerning the amount of costs to be awarded (Docket Item 55).

Accordingly, I respectfully recommend that the Court make the following findings of fact and conclusions of law and award defendant RKO $53,807.00 in attorney's fees and $1,234.48 in costs, for a total of $55,041.48.

II.   <u>Findings of Fact</u>

A.   <u>The Parties</u>

1.   Plaintiff Nimkoff is a limited liability partnership engaged in the practice of law and maintaining an office at One Pennsylvania Plaza, Suite 2424, New York, New York 10022 (Complaint, filed September 12, 2007 (Docket Item 1) ("Compl."), at ¶ 1).

2.   Defendant RKO is a Delaware corporation engaged in the real estate business with its principal place of business in Miami Beach, Florida (Compl. ¶ 2; Answer, dated November 8, 2007 (Docket Item 10), at ¶ 2; Order, dated December 16, 2009 (Docket Item 56), at 7, 11-12).

2

B.  <u>Jurisdictional Discovery</u>

3.  On September 12, 2007, Nimkoff commenced this action for breach of contract and declaratory relief against defendants RKO and Fidelity (Compl.).  Nimkoff sought to recover a contingency fee that it claimed it earned in connection with Nimkoff's representation of RKO in a lawsuit filed in the Supreme Court of the State of New York (Compl. at ¶ 2, 6-20).

4.  In the Complaint, Nimkoff alleged that the court had subject matter jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332 (Compl. at ¶ 4).

5.  Despite its own allegations, by letter to the Court dated February 6, 2008, Nimkoff subsequently questioned whether diversity jurisdiction existed and requested discovery on the matter (Ex. N to the Affidavit of Ronald Nimkoff, sworn to August 18, 2010 ("Nimkoff Aff."), annexed to Plaintiff's Memorandum of Law in Opposition to Defendant RKO's Fee Application, dated August 18, 2010 ("Pl.'s Mem. in Opp."), at 1).  RKO neither challenged the Court's jurisdiction nor provided dispositive proof of diversity jurisdiction (Order, dated May 30, 2008 (Docket Item 19), at 1).  By Order dated May 30, 2008, your Honor directed RKO to provide sufficient proof to Nimkoff and the Court to moot the issue.

6.   RKO's president, Robert Herskowitz, submitted an affidavit on June 27, 2008, confirming that RKO was a Delaware corporation and that Miami Beach, Florida, was its principal place of business, as evidenced by RKO's letterhead and tax returns (Ex. P to Nimkoff Aff., annexed to Pl.'s Mem. in Opp., at ¶ 2).   Nevertheless, in a letter to the Court dated July 10, 2008, Nimkoff claimed RKO did not provide sufficient proof to moot the issue (Order, dated December 16, 2009, at 3, citing Pl.'s July 10, 2008 Letter at 5-9 and Exs. C-O).   Your Honor agreed that the subject matter jurisdiction issue could not be resolved solely on Mr. Herskowitz's affidavit, and you set a discovery schedule to address this issue (Order, dated December 16, 2009, at 3; Scheduling Order, dated August 22, 2008 (Docket Item 21)).

7.   By Order dated October 31, 2008, your Honor ex-tended discovery dates and informed the parties that "should Plaintiff's motion regarding the Court's jurisdiction turn out to be based on Plaintiff's failure to do its homework before filing this lawsuit, the Defendant may move for its costs on this issue of jurisdiction" (Docket Item 22).

8.   On March 31, 2009, Nimkoff moved for an evidentiary hearing on the jurisdictional issue (Docket Item 31), which your Honor denied on April 29, 2009 (Docket Item 44).

4

9.  On November 13, 2009, following the end of juris-
dictional discovery, Nimkoff renewed his motion for an eviden-
tiary hearing (Docket Item 48).

10.  By Order dated December 16, 2009, your Honor
denied Nimkoff's renewed motion and found that RKO was a Delaware
corporation with its principal place of business in Miami Beach,
Florida (Order, dated December 16, 2009, at 11-12).  In awarding
RKO costs for the expense of resolving the jurisdictional issue,
your Honor stated

> the Court concludes that prior to filing the Complaint
> Plaintiff either failed in its due diligence to dis-
> cover the voluminous documents upon which it later
> raised the jurisdictional issue,[] or -- what would be
> even more troubling to the Court -- alleged diversity
> jurisdiction in bad faith, despite its knowledge of
> substantial bases for challenging that allegation, all
> the while planning to flip its position and utilize the
> Court's discovery power.

(Order, dated December 16, 2009, at 14 (footnote omitted)).

11.  On December 31, 2009, Nimkoff moved for reconsid-
eration of the Court's December 16 Order (Docket Items 58, 60).
Your Honor denied the motion on April 7, 2010 (Docket Item 72).

12.  By Order dated December 16, 2009, your Honor
referred this matter to me to conduct an inquest and issue a
report and recommendation concerning RKO's attorney's fees and
costs (Docket Item 55).

13.   Pursuant to the Order of Reference, I issued a Scheduling Order on December 22, 2009, directing RKO to serve and file Proposed Findings of Fact and Conclusions of Law, along with evidentiary materials supporting its claim for damages, by February 1, 2010 (Docket Item 57).  My Order further directed the plaintiff to submit its responsive materials by March 1, 2010. Both parties made submissions pursuant to my Order.

14.   On March 21, 2011, RKO submitted a letter to me alleging that Nimkoff's opposition papers contained "misstatements of law and fact" by Nimkoff.  In resolving the fee dispute, I have not considered RKO's March 21, 2011 letter or Nimkoff's response to it.

15.   RKO seeks $78,542.75 in attorney's fees and $1,262.32 in costs incurred during jurisdictional discovery and in filing its opposition to Nimkoff's motion for an evidentiary hearing (Defendant's Proposed Findings of Fact and Conclusions of Law, dated June 18, 2010 ("Def.'s Proposed Findings of Fact"), at ¶¶ 19-26).  Nimkoff challenges RKO's application for expenses on several grounds.

6

III.  Conclusions of Law

    A.  Attorney's Fees

      16.  Nimkoff claims that RKO is not entitled to attorney's fees.  Nimkoff argues that the December 16 Order never expressly stated that attorney's fees were to be reimbursed. Rather, Nimkoff argues that because your Honor repeatedly referred to "costs," RKO is therefore precluded from seeking reimbursement of attorney's fees (Pl.'s Mem. in Opp. at 3-6). Nimkoff also cites authority supporting the general "American Rule" that each party should bear its own attorney's fees (Pl.'s Mem. in Opp. at 3).  Nimkoff's argument is not persuasive.

      17.  Under Federal Rule of Civil Procedure 11(c)(4), a sanction may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses."  Additionally, a party sanctioned pursuant to 28 U.S.C. § 1927 "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Finally, a court has the power to direct payment of attorney's fees under its inherent powers. See, e.g., First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, 118 F.3d 892, 898 (2d Cir. 1997), quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46

7

(1991) (court's inherent power includes ability to "assess
attorney's fees when a party has 'acted in bad faith, vexa-
tiously, wantonly, or for oppressive reasons.'"); <u>Handschu v.
Police Dep't of the City of N.Y.</u>, 679 F. Supp. 2d 488, 502
(S.D.N.Y. 2010) (same); <u>see also</u> <u>Roadway Exp., Inc. v. Piper</u>, 447
U.S. 752, 765 (1980) ("There are ample grounds for recognizing,
however, that in narrowly defined circumstances federal courts
have inherent power to assess attorney's fees against counsel . .
. ."); <u>New York Hosp. Med. Ctr. of Queens v. 1199 Nat'l Health &
Human Servs. Emps. Union, AFL-CIO</u>, 242 F.3d 366, 2000 WL 1786341
at *2 (2d Cir. 2000) (unpublished) (citation omitted).

    18.  While Nimkoff argues that attorney's fees were
never expressly mentioned in any of the court's orders or refer-
ral, it fails to recognize that their recovery was not barred,
either.  In fact, in awarding RKO "costs for its expenses in-
curred during jurisdictional discovery," your Honor cited cases
where attorney's fees were included as part of the sanctions
(Order, dated December 16, 2009, at 14-15, <u>citing</u> <u>Methode Elecs.,
Inc. v. Adam Techs., Inc.</u>, 371 F.3d 923, 928 (7th Cir. 2004); <u>and
Sgarlata v. Viacom, Inc.</u>, 02 Civ. 7234 (RCC), 03 Civ. 5228 (RCC),
2005 WL 659198 at *8 (S.D.N.Y. Mar. 22, 2005) (Casey, D.J.).
Because attorney's fees may generally be awarded for sanctionable
conduct -- and because your Honor cited authority including

attorney's fees in sanctions -- I conclude that your Honor's Order awarded RKO the reasonable attorney's fees and costs it incurred in conducting jurisdictional discovery.

19.   In determining the amount of reasonable attorney's fees, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This figure was previously referred to as the "lodestar," but in Arbor Hill the Second Circuit abandoned the use of this metaphor as unhelpful.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 190; see also Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (per curiam) ("'[T]he starting point for the determination of a reasonable fee is the calculation of the lodestar amount.'"), quoting Hensley v. Eckerhart, supra, 461 U.S. at 433; Hnot v. Willis Grp. Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008).

20.   RKO claims a lodestar figure of $78,542.75.  This figure is based on 220.75 hours of legal work performed by lead counsel Ira Tokayer, Esq., who charged $325.00 per hour ($71,743.75), plus 52.30 hours of legal work performed by

9

attorney Abraham Katsman, who charged $130.00 per hour
($6,799.00) (Tokayer Decl. at ¶¶ 4-6; Katsman Decl. at ¶¶ 4-5;
Def.'s Proposed Findings of Fact at ¶¶ 19-24).  RKO has provided
billing records for its attorneys.  Nimkoff challenges the total
hours expended on this matter as unreasonable on several grounds
but does not challenge the hourly rates sought by RKO's attor-
neys.  Because Nimkoff makes no argument concerning the rates
sought by RKO's attorneys, I accept these rates as reasonable.

    B.  Reasonable Number
        of Hours

     21.  The party seeking fees bears the burden of estab-
lishing that the number of hours for which compensation is sought
is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec.
Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing Hensley v.
Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n
of N.Y. v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202
(SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003)
(Scheindlin, D.J.).

     22.  In applying for attorney's fees and costs, "any
attorney . . . must document the application with contemporaneous
time records.  These records should specify, for each attorney,

10

the date, the hours expended, and the nature of the work done."
New York State Ass'n for Retarded Children, Inc. v. Carey, 711
F.2d 1136, 1148 (2d Cir. 1983).  Transcriptions of contemporane-
ous time records containing the above information have been found
to satisfy this requirement.  See, e.g., Cruz v. Local Union No.
3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160 (accept-
ing a "typed listing of [attorneys'] hours from their computer
records," in lieu of contemporaneous records, where the record
showed that the attorneys "made contemporaneous entries as the
work was completed, and that their billing was based on these
contemporaneous records"); Tri-Star Pictures, Inc. v. Unger, 42
F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.) ("The
actual original time sheets are not necessary; submitting an
affidavit and attaching a computer printout of the pertinent
contemporaneous time records is acceptable."); Johnson v. Kay,
742 F. Supp. 822, 837 (S.D.N.Y. 1990) (Sweet, D.J.) ("Where the
attorneys have provided the court with affidavits that have been
reconstructed from contemporaneous records and that set forth all
charges with specificity, fees have not been denied."); Lenihan
v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986)
(Conner, D.J.) ("The Court routinely receives computerized
transcriptions of contemporaneous time records from firms whose
billing records are maintained in computers" as "a

11

form convenient for the Court.").  "Attorneys' fees applications
that do not contain such supporting data[, however,] 'should
normally be disallowed.'"  <u>Cablevision Sys. N.Y.C. Corp. v. Diaz</u>,
01 Civ. 4340 (GEL)(FM), 2002 WL 31045855 at *5 (S.D.N.Y. July 10,
2002) (Maas, M.J.) (Report and Recommendation), <u>quoting</u> <u>N.Y.</u>
<u>State Ass'n for Retarded Children, Inc. v. Carey</u>, <u>supra</u>, 711 F.2d
at 1154, <u>and</u> <u>citing</u> <u>Kingvision Pay-Per-View v. The Body Shop</u>, 00
Civ. 1089 (LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13, 2002)
(Swain, D.J.).

          23.  In assessing the number of hours for which compen-
sation should be awarded, "[t]he court's role is not to determine
whether the number of hours worked by [the movant's] attorneys
represents the most efficient use of resources, but rather
whether the number is reasonable."  <u>In re Arbitration Between</u>
<u>P.M.I. Trading Ltd. v. Farstad Oil</u>, 160 F. Supp. 2d 613, 616
(S.D.N.Y. 2001).  "If a court finds that the fee applicant's
claim is excessive, or that time spent was wasteful or duplica-
tive, it may decrease or disallow certain hours or, where the
application for fees is voluminous, order an across-the-board
percentage reduction in compensable hours."  <u>Santa Fe Natural</u>
<u>Tobacco Co. v. Spitzer</u>, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP),
2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002), <u>citing</u> <u>In re</u>

"Agent Orange" Prods. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987).

24.  I shall first address whether Tokayer and Katsman have submitted contemporaneous time records.  As explained below, I conclude that Tokayer's time records are contemporaneous, but that Katsman's time records are not.

25.  I find that there are crucial differences between the time records of these attorneys.  Tokayer states in his declaration that his invoices are "a copy of my time records which are prepared and maintained in the ordinary course of my business and it is the ordinary course of my business to prepare and maintain such records" (Tokayer Decl. at ¶ 3).  Katsman does not make any such statement in his declaration.

26.  A party's fee request submission must "indicate that it is based on contemporaneous time records." Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827 (HB)(GWG), 2008 WL 4449533 at *6 (S.D.N.Y. Oct. 2, 2008) (Baer, D.J.) (adopting Report and Recommendation) (collecting cases); Alston v. Northstar La Guardia LLC, 10 Civ. 3611 (LAK)(GWG), 2010 WL 3432307 at *4 (S.D.N.Y. Sept. 2, 2010) (Gorenstein, M.J.) (Report and Recommendation); Elektra Enter. Grp. Inc. v. Santangelo, 06 Civ. 11520 (SCR)(MDF), 2008 WL 400934 at *1 (S.D.N.Y. Feb. 11, 2008) (Mark Fox, M.J.); RLS Assocs., LLC. v. United Bank of

13

Kuwait PLC, 01 Civ. 1290 (CSH), 2002 WL 1285359 at *1-*2
(S.D.N.Y. June 10, 2002) (Haight, D.J.).  While Tokayer does not
expressly state that his records are contemporaneous, he refers
to a term of art -- "course of business" -- that Black's Law
Dictionary defines as "[t]he normal routine in managing a trade
or business."  Black's Law Dictionary 404 (9th ed. 2009).  In
this District, a representation that records were kept in the
ordinary course of business has been held sufficient to satisfy
the requirement that time records be contemporaneous.  E-Lead
Elec. Co. v. Tecnozone Enters., LLC, 03 Civ. 4901 (KMW)(DF), 2004
WL 2186539 at *2 (S.D.N.Y. Sept. 29, 2004) (Freeman, M.J.)
(approving reasonable attorney's fees for applicant who submitted
"a computer printout of his time records for the matter, kept in
the ordinary course of business" (citing plaintiff's affidavit));
see also Citrin v. Erikson, 918 F. Supp. 792, 805 (S.D.N.Y. 1996)
(Edelstein, D.J.) (approving attorney's fees where "[p]etitioners
did not . . . submit the original, handwritten time sheets filled
out by their attorneys on a daily basis, but submitted instead
the computer-generated billing records that Petitioners' law firm
contemporaneously creates in the ordinary course of business.").
Cf. Harrington Haley LLP v. Nutmeg Ins. Co., 39 F. Supp. 2d 403,
411 (S.D.N.Y. 1999) (Kaplan, D.J.) ("Law firms typically have
each lawyer, paralegal and other employee whose services are

14

billed on the basis of time expended keep contemporaneous time records.  Those records typically are, and in this case were, kept in the ordinary course of business.").

27.  Additionally, the invoices submitted by Tokayer are distinguishable from those submitted by Katsman.  Tokayer has produced copies of four invoices he submitted to RKO president Robert Herskowitz with dates of October 31, 2008, November 11, 2009, May 11, 2010 and June 9, 2010 (Invoices, attached as Ex. C to Tokayer Decl., annexed to Def.'s Proposed Findings of Fact).  In some cases, the work that Tokayer logged occurred many months prior to the actual dates of the invoices.  Nevertheless, I infer from these invoices, as well as Tokayer's declaration, that Tokayer logged his work at or near the time it was completed.

28.  In contrast, I can draw no such inference from Katsman's invoices and declaration.  Both of Katsman's invoices are dated May 11, 2010, which was long after Katsman completed any work on the matter of jurisdictional discovery (see Invoices, attached as Ex. B to Katsman Decl., annexed to Def.'s Proposed Findings of Fact).  I do not know if Katsman reconstructed all of his time records after the fact.  Tokayer's periodic invoices, on the other hand, suggest that time records were contemporaneously maintained.  Therefore, I conclude that Tokayer's time records

15

are contemporaneous, but I conclude that Katsman's time records are not.

29.   Tokayer's time records set forth the date on which services were performed, the hours spent and the nature of the work performed.   See Wells Fargo Bank v. BrooksAmerica Mortg. Corp., 02 Civ. 4467 (HB), 2004 WL 2754855 at *1 (S.D.N.Y. Dec. 1, 2004) (Baer, D.J.), citing Mikes v. Straus, 274 F.3d 687, 706 (2d Cir. 2001).   Tokayer's time records meet the requirement for the recovery of attorney's fees under N.Y. State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148.

30.   However, as Nimkoff argues, compensation is not justified for all of the hours expended by Tokayer.   While most time charges do not appear excessive, some are far too vague. Tokayer's records contain numerous descriptions that are cursory -- and some that are virtually indecipherable due to abbrevia- tion.   For example, an entry dated September 9, 2008, describes the services rendered as "Pcs re dscvry in N" (Ex. C, attached to Tokayer Decl., at 8).   I must make numerous assumptions to conclude that this entry refers to Tokayer's telephone calls regarding discovery in the Nimkoff case.   Unfortunately, Tokayer did not include an abbreviation key for his invoices, and it is not the court's duty to be a codebreaker.   Other entries provid- ing cursory descriptions include "Draft ltr

16

in N," "Rev ltrs; pc w/ct in N," "Draft aff (N)," "Draft ltr,"
"Pcs in N" and "Rev motion; lgl rsrch in N" (Tokayer Invoice at
2/11/08 entry, 5/16/08 entry, 6/18/08 entry, 10/26/08 entry,
12/23/08 entry, 3/12/09 entry).  These entries fail to provide
any information about the nature of the letters, phone calls,
affidavit, research and motion listed in the entries.

      31.  Courts have found similarly vague descriptions to
be deficient.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d
149, 172-73 (2d Cir. 1998) (upholding twenty percent reduction in
billed time for vagueness and other deficiencies where many time
entries merely read "letter to court," "staff conference," and
"work on motion"); United States Football League v. National
Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a
ten percent reduction of total fee award to account for vagueness
in documentation of certain time entries); Tucker v. Mukasey, 03
Civ. 3106 (LTS)(FM), 2008 WL 2544504 at *1-*2 (S.D.N.Y. June 20,
2008) (applying percentage reduction in hours billed on basis of
vagueness because entries "fail[ed] to describe adequately the
nature of the calls, the contents of the reports or documents, or
the topics of the discussions"); Sea Spray Holdings, Ltd. v. Pali
Fin. Grp., Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reduc-
ing fees by fifteen percent for time entries that were vague or
improper); People ex rel. Vacco v. RAC Holding, Inc.,

135 F. Supp. 2d 359, 364-65 (N.D.N.Y. 2001) (reducing total
lodestar award in civil rights class action by ten percent to
account for vague billing entries); Sabatini v. Corning-Painted
Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001)
(finding descriptions such as "hearing preparation," "telephone
conference with client," and "review records" too vague); Marisol
A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 396-97 & n.10
(S.D.N.Y. 2000) (Ward, D.J.) (concluding that "some of the time
entries are so vague that the Court is unable to determine
whether the time was reasonably expended"); Valmonte v. Bane, 895
F. Supp. 593, 601-02 (S.D.N.Y. 1995) (Schwartz, D.J.) (reducing
lodestar by twenty percent due to vague billing entries).

        32.  The vague nature of Tokayer's time entries is
exacerbated by his use of "block billing."  "While not prohib-
ited, block billing has a tendency to obfuscate the amount of
time expended on distinct tasks and introduces an element of
vagueness into a fee application, making it difficult to deter-
mine if the reported hours are duplicative or unnecessary."
Ass'n of Holocaust Victims for Restitution of Artwork & Master-
pieces v. Bank Austria Creditanstalt AG, 04 Civ. 3600 (SWK), 2005
WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005) (Kram, D.J.) (internal
quotation marks omitted).  Here, Tokayer's time entries reflect
frequent use of block billing (see, e.g., Tokayer

18

Invoice at 5/21/08 entry, 9/10/08 entry, 10/13/08 entry, 10/27/08
entry, 11/19/08 entry, 12/03/08 entry, 12/04/08 entry).  When
coupled with the vague descriptions of individual tasks as
described above, the block-billed entries on these invoices make
it nearly impossible to assess the reasonableness of the hours
billed.  The following entry, for which Tokayer billed 2.25
hours, illustrates the problem:

> Rev motion; drft opp to mot to compel; drft ltr re
> extension; pc w attys in N

(Tokayer Invoice at 4/01/09 entry).  From this description, it is
impossible to ascertain how much time was allocated to each of
the constituent tasks described in the entry.

33.  The fact that Tokayer produced redacted invoices
further exacerbates matters.  Tokayer frequently handwrote the
time spent on unredacted matters of a block-billed entry on a
particular date, crossing out the total time of the block entry
(see, e.g., Tokayer Invoice at 10/03/08 entry, 10/10/08 entry,
10/12/08 entry, 10/13/08 entry, 10/16/08 entry).  This type of
submission is not ideal.

34.  While the use of block-billing does not automati-
cally compel an across-the-board reduction, Hnot v. Willis Grp.
Holdings Ltd., supra, 2008 WL 1166309 at *6, the difficulty
created by Tokayer's "substantial" use of block-billing in this

case warrants such a reduction.  Alexander v. Amchem Prods.,
Inc., 07 Civ. 6441 (RJS), 2008 WL 1700157 at *8 n.9 (S.D.N.Y.
Apr. 3, 2008) (Sullivan, D.J.); see also Bank v. Ho Seo, 06 Civ.
15445 (LTS)(RLE), 2009 WL 5341672 at *6 (S.D.N.Y. Dec. 16, 2009)
(Ellis, M.J.) (Report and Recommendation), adopted as modified
by, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010) (Swain, D.J.) (reduc-
ing fees by thirty percent due to vagueness and block billing,
among other things); Molefi v. Oppenheimer Trust, 03 CV 5631
(FB)(VVP), 2007 WL 538547 at *7-*8 (E.D.N.Y. Feb. 15, 2007)
(applying fifteen percent reduction for block-billing and exces-
sive billing); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323,
332 (W.D.N.Y. 2006) (reducing ten percent of hours billed because
of vagueness and block-billing); Aiello v. Town of Brookhaven,
94-CV-2622 (FB)(WDW), 2005 WL 1397202 at *3 (E.D.N.Y. June 13,
2005) (applying ten percent reduction to billed hours because of
attorneys' "substantial" use of block-billing); Sea Spray Hold-
ings, Ltd. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 325-26
(S.D.N.Y. 2003) (applying fifteen percent reduction for block-
billing and excessive time entries).

        35.  Nimkoff further argues that "most all of
[Tokayer's] recorded time are in increments of one half of an
hour" (Pl.'s Mem. in Opp. at 8 n.5).  Indeed, a vast majority of
Tokayer's records are billed in half-hour or full-hour blocks.

While billing in such increments is not unreasonable <u>per se</u>, it calls into question the precision of the billing.  In <u>Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC</u>, 05 Civ. 6757 (LTS)(MHD), 2009 WL 466136 at *4 (S.D.N.Y. Feb. 25, 2009), the Honorable Michael H. Dolinger, United States Magistrate Judge, noted that even the practice of billing in quarter-hour segments

> tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete, and that adds an upward bias in virtually all cases.  This practice, which deviates from the use of tenth-of-an-hour increments utilized by many firms, has repeatedly been found improper and justifies some further conservatism in calculating the amount of compensable time.

(collecting cases).  <u>See</u> <u>also</u> <u>In re AOL Time Warner Shareholder Derivative Litig.</u>, 02 Civ. 6302 (CM), 2010 WL 363113 at *10 (S.D.N.Y. Feb. 1, 2010) (McMahon, D.J.) (adopting Report and Recommendation) (Court reduced hours by 10 percent where "time entries bear telltale signs of rounding and estimation, rather than precise recording.  A noticeable illustration is a pattern of some timekeepers of recording much of their daily time in even-hour increments, rather than a random mixture of daily hours ending in .00, .25, .50 and .75."); <u>Gutman v. Klein</u>, 03 CV 1570 (BMC)(RML), 2010 WL 4975593 at *20 (E.D.N.Y. Aug. 19, 2010) (reducing hours by 20 percent of firm billing in 15-minute increments) (citation omitted).

36. Next, Nimkoff argues that certain legal work for which RKO now requests fees has already been deemed unnecessary by the court and, thus, should be excluded. Specifically, Nimkoff seeks exclusion of fees related to (1) the Nimkoff deposition on October 13, 2008; (2) the drafting of discovery requests and notices in September 2008; (3) a letter application to compel Nimkoff to produce discovery responses dated October 27, 2008, and (4) fees with respect to preparing a letter dated October 23, 2009, and in preparation for a conference on October 27, 2009. Nimkoff also argues, as a general matter, that RKO should not recover fees incurred because of its own recalcitrance during discovery, which necessitated additional communications and conferences with the court (Pl.'s Mem. in Opp. at 9-14).

37. Nimkoff argues, unpersuasively, that the deposition of Ronald Nimkoff was "needless and improper" ((Pl.'s Mem. in Opp. at 12). The December 16, 2009, Order resolving the jurisdictional issue, however, expressly relied on the deposition of Nimkoff (Order, dated December 16, 2009, at 13-14). Therefore, I recommend that your Honor allow the costs incurred with respect to the Nimkoff deposition.

38. Nimkoff correctly notes that your Honor stated in the Order of October 31, 2008 that "[s]ince it is the citizenship of the Defendant that is at issue, it is not clear to the Court

why the Plaintiff would have any discovery to produce."  That
Order expressly limited defendant's discovery requests to "[a]ny
discovery that Defendant seeks from Plaintiff on Defendant's
citizenship" and directed that it "shall set forth why each
request or demand is relevant to the question of Defendant's
citizenship at the time this lawsuit was filed" (Order, dated
October 31, 2008 (Docket Item 22), at 1-2).  However, the time
records that Nimkoff describes as unnecessary -- entries from
September and October 2008 regarding the discovery requests and
the letter application -- relate to services performed prior to
the Order.

   39.  Nimkoff seems to argue either that it was a
foregone conclusion that the court would limit discovery to the
location of RKO's principal place of business or that such
limitation was already in place (Pl.'s Mem. in Opp. at 10-12).
In its initial February 2008 letter to the court on the matter,
Nimkoff narrowly framed the issue, stating that "[t]he discovery
that the Nimkoff Firm wishes to pursue relates solely to the
issue of subject matter jurisdiction and, more specifically, to a
question concerning the principal place of business of defendant
RKO Properties, Ltd" (Letter from Ronald Nimkoff, dated February
6, 2008, attached as Ex. N to Nimkoff Aff., annexed to Pl.'s Mem.
in Opp., at 1).  Nevertheless, a brief review of the court's

previous Orders is necessary.  The Order of May 30, 2008, de-
scribed subject matter jurisdiction as the "sine qua non" of the
matter and directed defendants to provide sufficient proof to
moot the issue.  When defendants' proof was deemed insufficient,
the Court entered a subsequent Scheduling Order, dated August 22,
2008, for "[j]urisdictional [d]iscovery [o]nly," which included
"document production[,] interrogatories [and] deposition(s)"
(Docket Item 21).  Neither party has provided a transcript of the
August 22, 2008, conference that resulted in the Scheduling
Order.  No express limitation was given in the Scheduling Order
that discovery was limited to the defendant's citizenship.

40.  While the issue is close, I recommend that RKO be
allowed to recover fees incurred for its discovery requests and
the letter application prior to the October 31, 2008 Order.
Although the court ruled against RKO on the scope of jurisdic-
tional discovery, I do not believe that RKO was unreasonable in
seeking discovery on plaintiff's citizenship.  Therefore, I
recommend that compensation for these hours be permitted.

41.  Next, Nimkoff objects to fees associated with
RKO's preparation of a letter dated October 23, 2009, and a
conference on October 27, 2009.  Nimkoff argues that "[b]oth the
letter and the conference dealt in large part with RKO's request
for bank statements concerning escrowed money held in a Fidelity

24

account and not just jurisdictional discovery" (Pl.'s Mem. in
Opp. at 13).  While the escrow account was one major issue
addressed both in RKO's letter and the conference, RKO also spent
considerable time discussing the productions of the tax returns
of RKO's principal in its letter and the relationship between
this issue pertaining to jurisdictional discovery was discussed
at length during the conference (see Exs. GG, MM, attached to
Nimkoff Aff., annexed to Pl.'s Mem. in Opp.).  However, to the
extent that the time billed for this letter and this conference
did not relate to jurisdictional discovery, I will factor it into
my recommended reduction for the previously addressed deficien-
cies based on vague, imprecise and block-billed entries.

        42.  Finally, Nimkoff argues that RKO should not be
reimbursed for its "repeated failures to produce discoverable
materials, its refusal to comply with discovery orders and its
general recalcitrance in complying with its discovery obliga-
tions" (Pl.'s Mem. in Opp. at 13-14).  Indeed, a review of the
transcript of the October 27, 2009, conference reveals that I
told Tokayer that "I'm very troubled with respect to the tax
returns.  I twice ordered them produced without condition; they
haven't been produced" (Ex. GG, attached to Nimkoff Aff., annexed
to Pl.'s Mem. in Opp., at 4).  To the extent that RKO's recalci-
trance on this issue further delayed or extended the time spent

on jurisdictional discovery, I will factor it into my recommended reduction.

43. Accordingly, I recommend that Tokayer's hours be reduced by twenty-five percent to account for the substantial use of block-billing coupled with excessive billing, billing in large increments, vague time entries and unnecessary extension of time spent on jurisdictional discovery. This would reduce the 220.75 hours he requested to 165.56 hours. Using an hourly rate of $325, I respectfully recommend that Tokayer be awarded $53,807.00.[1] As addressed above, I respectfully recommend that Katsman be awarded nothing because of his failure to provide contemporaneous records.

---

[1]I note in passing that Tokayer incorrectly entered the date of an August 2008 conference before your Honor on his invoice. While the conference apparently took place on Friday, August 22, 2008 (see Scheduling Order, dated August 22, 2008 (Docket Item 21), at 2), a Tokayer entry of 8/23/08 reads "Attend ct conf in N." Since that day was a Saturday, and since you had signed a Scheduling Order the day before, I assume Tokayer was mistaken. However, Tokayer correctly entered the dates of discovery conferences before me on February 9, 2009, October 27, 2009, and December 2, 2009 (see Orders dated February 9, 2009, October 27, 2009 and December 3, 2009 (Docket Items 28, 47, 51); Tokayer Invoice at 2/09/09 entry, 10/27/09 entry, 12/02/09 entry). Therefore, I conclude that Tokayer's incorrect entry was harmless and decline to further reduce his hours on that basis.

26

B.  Costs

44.  RKO also requests an award of costs in the amount of $1,262.32 (Def.'s Proposed Findings of Fact at ¶ 25).  These costs are comprised of the following:

|                    |           |
| ------------------ | --------- |
| Messenger Fees     | $154.88   |
| Westlaw Research   | $54.20    |
| Transcript Fees    | $1,025.40 |
| Postage            | $23.84    |
| Travel             | $4.00     |

(Ex. C, attached to Tokayer Decl., annexed to Def.'s Proposed Findings of Fact).

45.  Under Rule 11, applicants seeking costs must provide the court with expense records.  Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 667 (S.D.N.Y. 1997) (Kram, D.J.), citing Durant v. Traditional Invs., Ltd., 135 F.R.D. 42, 50 (S.D.N.Y. 1991) (Leisure, D.J.). "Fees and expenses must be both necessary and reasonable." Howard v. Klynveld Peat Marwick Goerdeler, supra, 977 F. Supp. at 667, citing Nemeroff v. Abelson, 94 F.R.D. 136, 146 (S.D.N.Y. 1982) (Carter, D.J.), aff'd, 704 F.2d 652 (2d Cir. 1983).

46.  Here, RKO has provided itemized records that appear to be contemporaneous for most of the items it requests (Ex. C, attached to Tokayer Decl., annexed to Def.'s Proposed Findings of Fact).  For example, RKO seeks $154.88 in messenger

27

fees for 16 different occasions in which it used a messenger. RKO has submitted dated invoices chronicling all 16 of these occasions.

47.   Additionally, RKO has provided invoices for its Westlaw research.  Nimkoff's argument that research costs are not compensable as a matter of law is not persuasive (Pl.'s Mem. in Opp. at 15-16).  "Whether to include the cost of electronic research in a Rule 11 award lies within the discretion of this Court."  Kochisarli v. Tenoso, 02-CV-4320 (DRH)(MLO), 2007 WL 1017613 at *6 (E.D.N.Y. Mar. 30, 2007) (citation omitted); Capone v. Patchogue-Medford Union Free Sch. Dist., 04-CV-2947 (JS)(MLO), 2011 WL 743573 at *5 (E.D.N.Y. Feb. 23, 2011) (citation omitted).

> Courts in this Circuit previously interpreted United States ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp., 95 F.3d 153 (2d Cir. 1996), as holding that the expense of computerized legal research was not a taxable cost.  See, e.g., King v. JCS Enter., Inc., 325 F.Supp.2d 162, 171-72 (E.D.N.Y. 2004); Cartier Int'l B.V. v. Gorski, 2003 WL 25739624, at *4-5 (D.Conn. Apr. 30, 2003); O'Grady v. Mohawk Finishing Products, Inc., 1999 WL 30988, at *7 (N.D.N.Y. Jan. 15, 1999).  However, since the Second Circuit held in Arbor Hill that computerized legal research fees are recoverable if the attorney "normally bills its paying clients" for that cost, 369 F.3d at 98, courts have consistently permitted the recovery of legal research fees as a part of costs, see, e.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL 4613752, at *18 (S.D.N.Y. Oct. 17, 2008); Cheesecake Factory Assets Co., 2008 WL 2510601, at *6; Wise v. Kelly, 2008 WL 482399, at *17 (S.D.N.Y. Feb. 21, 2008); Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A., 478 F.Supp.2d 508, 512-13

(S.D.N.Y. 2007); <u>Aiello v. Town of Brookhaven</u>, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005).

<u>Cesario v. BNI Const., Inc.</u>, 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209 at *10 n.3 (S.D.N.Y. Dec. 15, 2008) (Gorenstein, M.J.) (Report and Recommendation), <u>adopted by</u>, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009) (Stanton, D.J.).

48. In the exercise of my discretion, I conclude that research costs should be reimbursed here. If not for the plaintiff's "failure to do its homework before filing this lawsuit" or bad faith, RKO would not have spent money researching a matter it did not contest. It seems only fair that RKO should be reimbursed for the research costs incurred in this exercise, particularly since it submitted itemized, dated invoices from Westlaw. <u>See</u> <u>Dallas v. Goldberg</u>, 95 Civ. 9076 (LTS)(RLE), 2003 WL 22872325 at *1 (S.D.N.Y. Dec. 5, 2003) (Swain, D.J.) (finding computer research expenses compensable as sanctions pursuant to Rule 16 and court's inherent authority to manage proceedings).

49. Similarly, I recommend that transcript fees be reimbursed. RKO has produced itemized records, and I deem the transcript fees to be both reasonable and necessary for the reasons already addressed above with respect to the deposition of Ronald Nimkoff. <u>Kappenberger v. Oates</u>, 663 F. Supp. 991, 994 (S.D.N.Y. 1987) (Cooper, D.J.) (daily copy of transcript totaling

29

$1,321.20 deemed to be a reasonable expense under Rule 11).
Nimkoff objects only to the relevance of the deposition tran-
script and makes no objection on the basis that these fees are
not recoverable as a matter of law.

50.  I must, however, recommend that the fees for
postage and transportation not be reimbursed.  Here, RKO offered
no itemized bills, merely including these costs on a schedule at
the beginning of Exhibit C of its Proposed Findings of Fact.

51.  Accordingly, I respectfully recommend that the
court reimburse RKO $1,234.48 in costs, subtracting the $27.84
disallowed from the $1,262.32 requested.

C.  Nimkoff's Payment Issues

52.  Nimkoff also claims that it would not be appropri-
ate to order it to make payment now.

53.  First, Nimkoff argues that an order directing
payment to RKO will effectively moot Nimkoff's appeal.

> That is because, if the Nimkoff Firm is now required to
> pay sums to RKO, which, on information and belief, has
> no assets other than its claims in this action (which I
> submit are worth little or nothing), Herskowitz, the
> sole officer, sole director and sole shareholder of RKO
> will, in all likelihood, take personal control over
> these funds and, because Herskowitz is judgment proof,
> retrieving those funds from Herskowitz -- after a
> successful appeal -- will not be accomplishable.

(Pl.'s Mem. in Opp. at 17).

54.  Second, Nimkoff notes that, in March 2010, it received a restraining notice from a judgment creditor of RKO, Herzfeld & Rubin, P.C. (Pl.'s Mem. in Opp. at 16; Ex. NN, attached to Nimkoff Aff., annexed to Pl.'s Mem. in Opp.).  Nimkoff argues that the restraining notice prohibits it from forwarding any property and money to RKO pursuant to Section 5222 of the New York Civil Practice Law and Rules.  Thus, Nimkoff argues that if the Court orders it to pay RKO's costs for the expenses incurred on this matter, it "will be faced with a judicial directive that is in direct conflict with its statutory obligation to refrain from transferring funds to RKO" (Pl.'s Mem. in Opp. at 16-17).

55.  Both of these issues are beyond the scope of the reference to me.  The matter has been referred to me solely to calculate the amount of fees and costs to be awarded.  The timing of any payment is beyond these specific issues.

IV.  <u>Conclusions</u>

For all the foregoing reasons, I respectfully recommend that the Court award defendant RKO $53,807.00 in attorney's fees and $1,234.48 in costs, for a total of $55,041.48.

V.  Objections

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

<u>Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        April 7, 2011

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Daniel G. Ecker, Esq.
Traub Lieberman Straus
& Shrewsberry LLP
Seven Skyline Drive
Hawthorne, New York  10532

Ronald A. Nimkoff, Esq.
Nimkoff Rosenfeld & Schechter, LLP
Suite 2424
One Pennsylvania Plaza
New York, New York  10119

Ira D. Tokayer, Esq.
Seventh Floor
405 Lexington Avenue
New York, New York  10174

Rebecca A. Brazzano, Esq.
Thompson Hine LLP (NYC)
Floor 12
335 Madison Avenue
New York, New York  10017