UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NIMKOFF ROSENFELD & SCHECHTER,      :
LLP,
                                    :    07 Civ. 7983 (DAB)(HBP)
               Plaintiff,
                                    :    OPINION
     -against-                           AND ORDER
                                    :

RKO PROPERTIES, LTD., et al.,
                                    :

               Defendants.
                                    :
----------------------------------X

          PITMAN, United States Magistrate Judge:


I.   Introduction


          This is an action by plaintiff Nimkoff Rosenfeld &

Schechter, LLP ("Nimkoff"), a law firm, to recover the fee it

claims it is owed for representing RKO Properties, Ltd. ("RKO")

in an action in New York State court.  RKO denies that it owes

money to Nimkoff and claims that Nimkoff committed malpractice.

I write to resolve the parties' outstanding applications to take

additional discovery from the law firm -- Herzfeld & Rubin

("H&R") -- that represented RKO's adversary in the state court

action.

          For the reasons set forth below, the applications are

denied in part, and granted in part.

II.   Background

Nimkoff commenced this action against RKO to recover fees it alleges it is owed from its representation of RKO in RKO Properties v. Shaya Boymelgreen, et al. (the "Boymelgreen Action").   RKO claims that the fee agreement between Nimkoff and RKO was modified in or around the time that a settlement in the Boymelgreen Action was reached.   RKO has also counterclaimed against Nimkoff for malpractice.   It claims that but for Nimkoff's representation, it would have been able to negotiate a more favorable settlement in the Boymelgreen Action.

Both parties have sought discovery from H&R, the law firm that represented RKO's adversary in the Boymelgreen Action. According to the parties, there are critical factual disputes about what transpired between RKO and Nimkoff during the settlement negotiations of the Boymelgreen Action, including whether the fee agreement between Nimkoff and RKO was modified and the circumstances surrounding Nimkoff's exclusion from the settlement negotiations.   Notwithstanding that there are no facts that suggest that H&R played any role in these events or was even privy to these conversations between attorney and client, the parties nevertheless claim that H&R and its attorneys may have relevant information by virtue of the fact that they represented

2

RKO's adversary at that time.

H&R has produced numerous documents in this action. In addition, the parties have deposed two attorneys who worked on the Boymelgreen Action for H&R. Sharon Schweidel, a former H&R associate, answered questions about her involvement in the underlying litigation and her knowledge of the settlement negotiations (Ex. L to Letter from Daniel Ecker, Esq., dated January 9, 2013 ("Ecker Letter")). In addition, Herbert Rubin, Esq., a senior member of H&R, submitted to a full day deposition in this action (Ex. A to Ecker Letter).

By an order dated December 19, 2012, I directed Nimkoff and RKO to provide me with a copy of the transcript of Mr. Rubin's deposition, a list of the additional topics they wish to explore with H&R or its attorneys and an explanation as to why these additional topics were not explored at Mr. Rubin's deposition (Docket Item 159).

RKO claims that it needs to depose Mr. Rubin further on:  (1) the reason why the defendants in the Boymelgreen Action did not timely consummate the settlement; (2) other aspects of the settlement negotiations; (3) the requirements for delivery of the releases, breaches of the settlement agreement and the entry of judgment in favor of H&R against RKO and (4) the manner in which H&R maintains its email and other correspondence (Letter

3

from Ira D. Tokayer, Esq, dated January 9, 2013 ("Tokayer Letter")).  RKO claims that it was not able to complete its examination concerning these topics because Mr. Rubin terminated the deposition early.  RKO makes very little attempt to explain the relevancy of these topics, other than to assert that it did not have a full opportunity to inquire into these areas that Nimkoff had explored in its examination and that these topics may shed light on the fee arrangement between Nimkoff and RKO.  RKO also seeks to depose Arthur Strauss -- another attorney from H&R -- who it claims has the most knowledge about the consummation of the settlement in the Boymelgreen Action.

Nimkoff has taken no position with respect to the continuation of Mr. Rubin's deposition, but instead seeks to depose Ian Ceresney, the H&R attorney who had primary responsibility for the settlement negotiations in the Boymelgreen Action.  According to Nimkoff, Mr. Ceresney's testimony is relevant because he may have knowledge about (1) whether the document purporting to modify the fee agreement between Nimkoff and RKO ever became effective and (2) the settlement negotiations after Nimkoff was excluded (Ecker Letter at 7; see also Letter from Daniel Ecker, Esq., dated January 23, 2013).

Mr. Rubin requests that the subpoenas to Mr. Strauss and Mr. Ceresney be vacated and that the request to continue his

4

deposition be denied.  In addition, he requests that if any
further discovery is permitted from H&R that it be limited to
written interrogatories (Letter from Herbert Rubin, Esq., dated
January 14, 2013 ("Rubin Letter")).

III.  Analysis

    A.  Mr. Rubin's Deposition

        The application to continue the deposition of Mr. Rubin
is denied, and Mr. Rubin's deposition is closed.

        I have carefully reviewed the transcript of Mr. Rubin's
deposition (Transcript of Rubin Deposition, attached as Ex. A to
Ecker Letter ("Rubin Tr.")).  Both Nimkoff and RKO questioned Mr.
Rubin on topics that have minimal -- if any -- relevance to the
issues in this action.  For example, both parties questioned Mr.
Rubin on court documents that H&R submitted in connection with
the Boymelgreen Action and affidavits that Mr. Rubin himself
submitted.  The relevance of these documents to the claims at
issue here is close to non-existent.  The documents speak for
themselves, and, unless Mr. Rubin is retained as an expert, any
assessment or opinion that Mr. Rubin may have of them is
irrelevant to a legal malpractice claim which is judged by an
objective standard.  See Rubens v. Mason, 387 F.3d 183, 189 (2d

Cir. 2004).  Neither party has identified any factual disputes concerning the Boymelgreen Action that are not illuminated by the court record or of which Mr. Rubin would have unique personal knowledge.

I also note that counsel for RKO spent an inordinate amount of time examining Mr. Rubin on matters wholly unrelated to this action.  For example, RKO's counsel questioned Mr. Rubin about H&R's internal processes, including the manner in which it sets up its client files (see, e.g., Rubin Tr. at 135:21-25 ("Q [Mr. Tokayer]:  Is it the practice of the Herzfeld & Rubin firm when it is retained to represent the client to assign a client matter number?  A [Mr. Rbuin]:  We -- we assign a client number to matters that we act as attorneys.")) and its use of email and other forms of correspondence (see, e.g., 143:4-151:3).  H&R's internal practices have absolutely no bearing on the fee dispute or the malpractice claim here.

RKO's counsel also persisted in asking Mr. Rubin whether affidavits he submitted in the Boymelgreen Action and swore were true were, in fact, true (see, e.g., Rubin Tr. at 152:24-162:6; 172:14-173:23; 175:2-177:16).  RKO has not identified any factual basis to doubt the accuracy of Mr. Rubin's affidavits, and its examination of Mr. Rubin concerning these documents was entirely ineffectual and wasteful.  Put simply, RKO

squandered its opportunity to question Mr. Rubin on potentially relevant matters in favor of questioning him on irrelevant matters and matters that were not in genuine dispute.  Given RKO's improvidence, there is no reason for Mr. Rubin to submit to additional questioning.

It is also relevant to note that Mr. Rubin is the second H&R attorney that the parties have deposed.  On December 26, 2012, the parties deposed Sharon Schweidel, a former associate at H&R, who had the day-to-day responsibility in the Boymelgreen Action (Transcript of Schweidel Deposition, attached as Ex. L to Ecker Letter).  The parties questioned her about the work she performed in connection with the Boymelgreen Action, as well as inquiring as to the work performed by other H&R attorneys.  This line of questioning, however, has minimal relevance to the action here.  Whatever work H&R performed in the underlying Boymelgreen Action is not probative of the fee arrangement between Nimkoff and RKO or Nimkoff's alleged malpractice.  Furthermore, as explained above, Ms. Schweidel's opinion of the quality of Nimkoff's representation is not relevant to the malpractice claim.

In light of the fact that the parties have deposed two H&R attorneys on whatever relevant knowledge they may have and

that both parties used their time pursuing relatively irrelevant matters, any further examination of Mr. Rubin is not warranted.

Finally, the topics that RKO has identified as warranting further examination of Mr. Rubin have no relevance to the claims at issue in this litigation.  The settlement discussions and the reasons underlying whatever delays there may have been proceeding the execution of the settlement agreement in the Boymelgreen Action does not bear on the issue of the fees that Nimkoff claims it is owed from RKO.  The fee agreement between Nimkoff and RKO was a private arrangement, and there is no indication that Rubin or any other attorney at H&R was privy to those details.  As noted above, the opinion of H&R's attorneys on Nimkoff's handling of the Boymelgreen Action is of little to no significance given the objective standard by which legal malpractice is measured.  Finally, the manner in which H&R maintains its correspondence or other files simply has no bearing on either Nimkofff's alleged malpractice or the fee arrangement between RKO and Nimkoff.

Accordingly, the application to continue Mr. Rubin's deposition is denied, and his deposition is closed.

B.  Depositions of
    Messrs. Ceresney and Strauss

Nimkoff seeks to depose Ian Ceresney, the H&R attorney who handled the Boymelgreen settlement negotiations, and RKO seeks to depose Arthur Strauss, the H&R attorney who secured the financing for the settlement in the Boymelgreen Action.  H&R seeks to have both of these subpoenas vacated.

It is doubtful that either Mr. Ceresney or Mr. Strauss will be able to provide information relevant to either the fee dispute or malpractice claim.  Although Mr. Ceresney was the attorney who handled the settlement negotiations for H&R in the Boymelgreen Action, it far from apparent -- and even doubtful -- that he has knowledge about any modification of the fee agreement between RKO and Nimkoff.  In his letter dated January 14, 2013, Mr. Rubin explained that Mr. Strauss was involved in the Boymelgreen Action only with respect to the funding of the settlement agreement through an outside source (Rubin Letter at 4).  Given his role at the periphery of the Boymelgreen Action, it is similarly unlikely that Mr. Strauss will have relevant information.

Accordingly, in light of the tangential relationship of H&R -- and these attorneys in particular -- to the matters in dispute here and the court's duty to protect non-party witnesses

9

from undue burden and harassment, <u>see</u> Fed.R.Civ.P. 45(c), oral depositions of Mr. Ceresney and Mr. Strauss are not appropriate.[1] I shall, however, permit Nimkoff and RKO to serve a total of 20 written interrogatories on these two witnesses.  For the sake of clarity, the number of interrogatories served shall not exceed 20, regardless of whether the parties serve them on one or both witnesses.  If Nimkoff and RKO cannot agree to an allocation of the interrogatories, they are to be divided evenly between Nimkoff and RKO.  Other than the discovery permitted herein, the parties shall not serve any other discovery requests on H&R or its current or former employees.

IV.  <u>Conclusion</u>

        For the foregoing reasons, the deposition of Herbert Rubin is closed and Nimkoff and RKO are limited to 20 written

---

        [1]Nimkoff claims that the Federal Rules of Civil Procedure do not permit a non-party witness to seek an order modifying a subpoena.  This understanding of the Federal Rules is erroneous. Fed.R.Civ.P. 45 expressly provides that "the issuing court must quash or modify a subpoena that . . . (iv) subjects a person to undue burden."  Fed.R.Civ.P. 45(c)(3)(A)(iv).  Given the tenuous claims of relevancy with respect to H&R, the subpoenas here constitute an undue burden and thus are subject to modification. <u>See</u> <u>Fears v. Wilhelmina Model Agency, Inc.,</u> 02 Civ. 4911 (HB)(HBP), 2004 WL 719185 at *1 (S.D.N.Y. Apr. 1, 2004) (Pitman, M.J.) ("[W]here, as here, discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non-party.").

interrogatories to obtain further discovery from H&R attorneys

Ian Ceresney and Arthur Strauss.

Dated:  New York, New York
        February 25, 2013

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Daniel G. Ecker, Esq.
Traub Lieberman Straus
   & Shrewsberry LLP
Seven Skyline Drive
Hawthorne, New York  10532

Ronald A. Nimkoff, Esq.
Nimkoff, Rosenfeld & Schechter, LLP
Suite 2424
One Pennsylvania Plaza
New York, New York  10119

Ira D. Tokayer, Esq.
7th Floor
405 Lexington Avenue
New York, New York  10174

Herbert Rubin, Esq.
Herzfeld & Rubin, P.C.
125 Broad Street
New York, New York  10004