```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NIMKOFF ROSENFELD & SCHECHTER,      :
LLP,
                                    :

                  Plaintiff,        :

    -against-                       :

RKO PROPERTIES, LTD. and FIDELITY
INVESTMENTS,                        :     07 Civ. 7983 (DAB)(HBP)

                  Defendants.       :     OPINION
                                          AND ORDER
----------------------------------X

RKO PROPERTIES, LTD.,               :

        Counterclaim-Plaintiff,     :

    -against-                       :

NIMKOFF ROSENFELD & SCHECHTER, LLP  :
and RONALD A. NIMKOFF,
                                    :
        Counterclaim-Defendants.
                                    :
----------------------------------X
```

PITMAN, United States Magistrate Judge:


I.  Introduction


            Plaintiff Nimkoff Rosenfeld & Schechter LLP and

counterclaim-defendant Ronald A. Nimkoff (collectively, the

"Nimkoff Firm"), move for an Order (1) holding Ira D. Tokayer,

Esq. in contempt for failing to produce a document in response to

a subpoena and compelling Tokayer to produce that document

(Notice of Motion, dated March 1, 2013 ("Contempt Motion")
(Docket Item 206)), and (2) disqualifying Tokayer as counsel for
defendant/counterclaim-plaintiff RKO Properties, Ltd. ("RKO"), on
the basis of the advocate-witness rule or a conflict of interest
(Notice of Motion, dated March 1, 2013 ("Disqualification Mo-
tion") (Docket Item 212)).

  For the reasons set forth below, the Contempt Motion is
denied, except that Tokayer is ordered to submit an affidavit
supporting the representations made in opposition to the Contempt
Motion, and the Disqualification Motion is denied without preju-
dice.

II.  <u>Facts</u>

  The facts giving rise to this action are set forth in
<u>Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.</u>, No.
07 Civ. 7983 (DAB)(HBP), 2013 WL 664711 (S.D.N.Y. Feb. 25, 2013)
(Pitman, M.J.) <u>and</u> 2011 WL 8955840 (S.D.N.Y. Apr. 7, 2011)
(Pitman, M.J.), familiarity with which is assumed.  The facts
relevant to the disposition of the present motions are set forth
below.

2

A.   Escrow Letter

On July 12, 2012, the Nimkoff Firm served Tokayer with
two subpoenas, which directed him to (1) appear for a deposition
and (2) produce documents related to, among other things, the
underlying Boymelgreen action (Subpoenas, dated July 12, 2012,
annexed as Exhibit C to the Declaration of Daniel G. Ecker, Esq.,
dated March 1, 2013 ("Ecker Decl.") (Docket Item 207)).  Tokayer
objected to the subpoena, and I held a discovery conference on
October 12, 2012 to discuss these objections and other issues.  I
granted RKO's application for a protective order precluding
Tokayer's deposition through December 31, 2012, with-out preju-
dice to a renewed application by the Nimkoff Firm to depose
Tokayer after discovery from other potential sources had been
exhausted (Order, dated October 12, 2012 (Docket Item 142),
¶ 12).  With respect to the subpoena for documents, I ordered
that Tokayer produce the requested documents, other than those
withheld on the ground of privilege, no later than October 26,
2012 (Order, dated October 12, 2012 (Docket Item 142), ¶ 13).

Pursuant to my October 12 Order, Tokayer provided the
Nimkoff Firm with responses and objections, along with a schedule
of privileged documents, on October 25, 2012 (Ira Tokayer's
Response and Objections to Plaintiff's Subpoena to Produce

3

Documents, dated October 25, 2012, annexed as Exhibit F to Ecker
Decl.).  The Nimkoff Firm complained that Tokayer's responses
were incomplete.[1]  As a result, I held another discovery confer-
ence with the parties on November 29, 2012.  During that confer-
ence, Tokayer's counsel repeatedly denied that Tokayer had
improperly withheld documents in response to the subpoena:

> [T]here appears to be on the part of the plaintiff
> a feeling that not [sic] complete production has been
> made.
>
> And I have made representations to them, to
> [plaintiff's counsel] personally, by voicemail, that we
> produced Mr. Tokayer's entire Boymelgreen file, [] with
> the exception of certain logged documents . . . .
>
> So I have nothing more to say to [plaintiff's
> counsel] about production except that we've produced
> everything with the exception of the privilege log.
>
>                  *     *     *
>
> [My] position is that Mr. Tokayer and I have
> produced everything in his file on the Boymelgreen
> matter that could conceivably bear on this case.

---

[1]The Nimkoff Firm also complained that Tokayer's objections
were improper in light of my ruling during the October 12 dis-
covery conference that Tokayer could no longer file objections to
the subpoena for documents due to untimeliness (Tr. of Discovery
Conference, dated October 12, 2012, at 66, 69, annexed as Exhibit
D to Ecker Decl.).  Because the Nimkoff Firm does not base its
arguments in either motion on that particular misconduct, any
claim concerning the untimeliness of Tokayer's objections has
been abandoned.  See Niagara Mohawk Power Corp. v. Hudson River-
Black River Regulating Dist., 673 F.3d 84, 107 (2d Cir. 2012).

(Tr. of Discovery Conference, held on November 29, 2012, at 23, 24, annexed as Exhibit J to Ecker Decl.).  Subsequently, on March 8, 2013, I ordered Tokayer to produce certain additional documents that he had previously withheld as privileged (Order, dated March 8, 2013 (Docket Item 163), annexed as Exhibit A to the Declaration of Mark K. Anesh ("Anesh Decl.") (Docket Item 222)).

In the Contempt Motion, the Nimkoff Firm argues that Tokayer should be held in contempt and sanctioned for failing to provide a document in response to the subpoena, pursuant to Fed.R.Civ.P. 45(e).  Specifically, the Nimkoff Firm alleges that Tokayer has intentionally withheld the production of a letter that Nimkoff sent to Tokayer on July 16, 2007.  The letter states:

> As you had requested, I have enclosed:
> (1) Stipulation and Notice of Cancellation of Notice of Pendency; (2) Stipulation Discounting Action with Prejudice; (3) My Affirmation dated July 16, 2007; (4) My letter of instructions to Ian Ceresney dated July 16, 2007; and (5) My letter to Robert Herskowitz dated July 16, 2007.
>
> These documents are delivered to you to be held in escrow and not delivered to anyone to maintain (including Robert Herskowitz) unless and until all five documents have been fully executed and fully executed originals of all five documents have been sent back to me.

(Letter from Nimkoff to Tokayer, dated July 16, 2007 (the "Escrow Letter"), annexed as Exhibit D to the Affidavit of Ronald A.

Nimkoff in Support for Contempt and Sanctions Against Ira D.
Tokayer, Esq., dated March 1, 2013 ("Nimkoff Aff.") (Docket Item
208)). Nimkoff has a copy of the letter in issue (Nimkoff Aff.,
Ex. D). He seeks Tokayer's copy to prove Tokayer's receipt of
the letter.

            In support of its theory that Tokayer's conduct is
contumacious, the Nimkoff Firm relies on several facts. First,
the Nimkoff Firm argues that the Escrow Letter refutes RKO's
defense in this action, thus, motivating Tokayer to withhold its
production (Memorandum of Law in Support of Motion for Contempt
and Sanctions, dated March 1, 2013 ("Pl.'s Contempt Mem."), at 1
(Docket Item 209)). Second, the Nimkoff Firm asserts that a
member of its firm personally hand-delivered the Escrow Letter,
along with the attachments, to Tokayer's office (Tr. of Discovery
Conference, dated April 8, 2013, at 13, annexed as Exhibit C to
Reply Declaration of Daniel G. Ecker in Further Support of Motion
for Contempt and Sanctions Against Ira D. Tokayer, Esq., dated
May 10, 2013 ("Reply Ecker Decl.") (Docket Item 210)). Third,
Tokayer purportedly produced the documents that were enclosed
with the Escrow Letter (Reply Memorandum of Law in Further
Support of Motion for Contempt and Sanctions, dated May 10, 2013
("Contempt Reply"), at 6 (Docket Item 211)). Fourth, when
Tokayer inspected files at the Nimkoff Firm's premise, Tokayer

                                6

examined but did not request a duplicate of the Nimkoff Firm's copy of the Escrow Letter (Contempt Reply at 6).  Fifth, during the deposition of RKO's president, Robert Herskowitz, Herskowitz was unable to recall how he had obtained one of the attachments enclosed with the Escrow Letter (Pl.'s Contempt Mem. at 10). Finally, the Nimkoff Firm draws a negative inference from Tokayer's failure to provide an affidavit in support of his opposition to the Contempt Motion (Contempt Reply at 7).

In opposition, Tokayer argues that the Contempt motion is baseless because "[Tokayer] is not in possession, nor does he recall ever being in possession, of the purported" Escrow Letter (Memorandum of Law Submitted on Behalf of Non-Party Ira D. Tokayer, Esq. in Opposition to Plaintiff/Counterclaim-Defendants' Motion for Contempt and Sanctions, dated April 19, 2013 ("Contempt Opp'n"), at 4 (Docket Item 223)).

B.  Tokayer as
    Advocate-Witness

The Nimkoff Firm has sought the disqualification of Tokayer as counsel for RKO since the inception of this action (Memorandum of Law in Support of Motion for Disqualification of Ira D. Tokayer, Esq., dated March 1, 2013 ("Pl.'s Disqualification Mem."), at 8 (Docket Item 215)).  The Nimkoff Firm has

continuously maintained that Tokayer's involvement with the underlying settlement makes him a necessary witness in this lawsuit (Pl.'s Disqualification Mem. at 8).  Morever, on November 16, 2012, the Nimkoff Firm filed a lawsuit against Tokayer in the Supreme Court of the State of New York, Nassau County (Index No. 14172/2012), alleging that Tokayer breached the terms of the Escrow Letter (Pl.'s Disqualification Mem. at 10-11).[2]  Relying on the foregoing, the Nimkoff Firm claims that Tokayer should be disqualified either pursuant to the advocate-witness rule or because there is a conflict of interest.

After the filing of this motion, on April 8, 2013, I granted the Nimkoff Firm's renewed application to depose Tokayer, finding that "there [was] a certain level of necessity to depose Mr. Tokayer on the issue" relating to the underlying Boymelgreen action (Reply Ecker Decl., Ex. C at 43).[3]  I limited Tokayer's deposition to topics relating to the negotiation of the underly-

---

[2]Since the filing of the present motions, the Honorable Steven M. Jaeger, Acting Supreme Court Justice of the Supreme Court of the State of New York, has granted Tokayer's motion to dismiss the Nimkoff Firm's state action complaint, for failure to state a cause of action under New York Civil Practice Law and Rules Section 3211(a)(7).  Hence, as of July 18, 2013, all proceedings under Index No. 14172/12 have been terminated.

[3]On April 22, 2013, Tokayer filed objections to my ruling (Docket Item 185), which the Nimkoff Firm opposed on May 20, 2013 (Docket Item 227).  To date, the Honorable Deborah A. Batts, United States District Judge, has not yet ruled on Tokayer's objections.

ing settlement agreement and to the Escrow Letter (Reply Ecker Decl., Ex. C at 48).

Tokayer opposes the Disqualification Motion on the grounds that (1) RKO does not intend to rely on Tokayer as a witness in support of either its defenses or counter-claims; (2) to the extent that the Nimkoff Firm intends to call him, the Nimkoff Firm has failed to demonstrate any resulting prejudice to RKO; (3) Tokayer's disqualification would cause substantial hardship to RKO and (4) the Nimkoff Firm's purported conflict-of-interest argument arises entirely out of the Nimkoff Firm's improper litigation tactics (Memorandum of Law Submitted on Behalf of Non-Party Ira D. Tokayer, Esq. and Defendant/Counter-claim-Plaintiff RKO Properties Ltd. in Opposition to Plain-tiff/Counterclaim-Defendants' Motion for Disqualification, dated April 19, 2013 ("Disqualification Opp'n") (Docket Item 220)).

III.  <u>Analysis</u>

    A.  Motion for Contempt
       <u>and Sanctions</u>

Rule 45(g) of the Federal Rules of Civil Procedure provides that a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena

or an order related to it."[4]   Fed.R.Civ.P. 45(g).   The Second

Circuit has recognized that,

> a contempt order . . . is a "potent weapon," <u>Interna-tional Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n</u>, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967), to which courts should not resort "where there is a fair ground of doubt as to the wrong-fulness of the defendant's conduct," <u>California Artifi-cial Stone Paving Co. v. Molitor</u>, 113 U.S. 609, 618, 5 S.Ct. 618, 622, 28 L.Ed. 1106 (1885).   A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contem-nor violated the district court's edict.   <u>See</u> <u>Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.</u>, 341 F.2d 101, 102 (2d Cir. 1965) (<u>per</u> <u>curiam</u>).   More spe-cifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unam-biguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.   <u>See</u> <u>New York State Nat'l Org. for Women v. Terry</u>, 886 F.2d 1339, 1351 (2d Cir. 1989), <u>cert</u>. <u>denied</u>, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

<u>King v. Allied Vision, Ltd.</u>, 65 F.3d 1051, 1058 (2d Cir. 1995),

<u>called into question on other grounds by</u> <u>Weitzman v. Stein</u>, 98

F.3d 717, 719 n.1 (2d Cir. 1996) <u>and</u> <u>N. Am. Oil Co., Inc. v. Star</u>

<u>Brite Distrib., Inc.</u> 14 F. App'x 73, 75 (2d Cir. 2001); <u>accord</u>

---

[4]Effective December 1, 2013, Fed.R.Civ.P. 45 was amended. Subsection (e) previously addressed holding a person in contempt for failing to obey a subpoena.   On December 1, 2013, that sub-section was re-designated as subsection (g) without substantive change.   <u>See</u> Advisory Committee Notes to 2013 Amendments to the Fed.R.Civ.P. 45(g) ("Subdivision (g) carries forward the author-ity of former subdivision (e) to punish disobedience of subpoenas as contempt.").   Accordingly, I apply cases concerning former Rule 45(e) to the current Rule 45(g).

Utica Coll. v. Gordon, 389 F. App'x 71, 72 (2d Cir. 2010); Latino Officers Ass'n City of N.Y., Inc. v. City of New York, 558 F.3d 159, 164 (2d Cir. 2009); United States v. N.Y.C. Dist. Council of N.Y.C., 229 F. App'x 14, 18 (2d Cir. 2007).

Further, the "contempt authority of magistrate judges is limited by the Federal Magistrates Act." Alston v. Select Garages LLC, 12 Civ. 1459 (GBD)(KNF), 2013 WL 3357172 at *2 (S.D.N.Y. July 3, 2013) (Fox, M.J.), citing 28 U.S.C. § 636(e) and Kiobel v. Millson, 592 F.3d 78, 88 (2d Cir. 2010) ("[C]oercive authority is entrusted to magistrate judges for matters within their statutory authority."). Under the Federal Magistrates Act, 28 United States Code Section 636(e), in any non-consent proceeding in which a party commits an act constituting a civil contempt before a federal magistrate judge,

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii). "In certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'" Bowens v. Atl. Maint.

Corp., 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (adopting report
and recommendation) (citation omitted); accord Alston v. Select
Garages LLC, supra, 2013 WL 3357172 at *2; Hunter TBA, Inc. v.
Triple V Sales, 250 F.R.D. 116, 18 (E.D.N.Y. Apr. 18, 2006).

     The Nimkoff Firm has failed to present clear and
convincing evidence of Tokayer's noncompliance with the October
12 Order and subpoena.  "In the context of civil contempt, the
clear and convincing standard requires a quantum of proof ade-
quate to demonstrate a 'reasonable certainty' that a violation
occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d
Cir. 2002); accord Leser v. U.S. Bank Nat'l Ass'n, 09-CV-2362
(KAM), 2011 WL 1004708 at *10 (E.D.N.Y. Mar. 18, 2011).  The
Nimkoff Firm's allegations, at best, show that Tokayer's office
received the Escrow Letter on or around the time the document was
purportedly delivered.  However, the Nimkoff Firm has presented
no facts indicating that Tokayer retained the letter and will-
fully withheld its production.  In other words, the Nimkoff Firm
has not shown that Tokayer still had possession, custody or
control over the Escrow Letter during the relevant time periods.
See Fed.R.Civ.P. 45(a)(1)(iii) (subpoena may command the produc-
tion of documents in that person's possession, custody or con-
trol); see also In re Flag Telecom Holdings, Ltd. Secs. Litig.,
236 F.R.D. 177, 180 (S.D.N.Y. Apr. 19, 2006) (Conner, D.J.) ("The

party seeking the production bears the burden of demonstrating
that the other party has control over the documents sought."
(citation omitted)).   Indeed, Tokayer denies having possession of
the Escrow Letter and argues that it "cannot produce a document
that is not within his possession, custody or control" (Contempt
Opp'n at 4).

In light of the Nimkoff Firm's argument that Tokayer
offers these statements without providing an affidavit, it is
hereby ORDERED that Tokayer submit an affidavit within seven (7)
days of the date of this Order confirming that he has conducted a
reasonably diligent search of his files for the Escrow Letter and
has been unable to locate either the original or a copy.   In all
other respects, the Nimkoff Firm's motion for contempt and
sanctions is denied because there is insufficient evidence to
support the allegation of noncompliance.

B.   Motion for
     Disqualification

A motion to disqualify an attorney is committed to the
discretion of the district court.   Purgess v. Sharrock, 33 F.3d
134, 144 (2d Cir. 1994).   "While New York law governs the profes-
sional conduct of attorneys in this state, '[t]he authority of
federal courts to disqualify attorneys derives from their inher-

ent power to preserve the integrity of the adversary process.'"
Air Italy S.p.A. v. Aviation Techs., Inc., 10-CV-20 (JG)(JMA),
2011 WL 96682 at *3 (E.D.N.Y. Jan. 11, 2011), quoting Hempstead
Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d
Cir. 2005).  The Second Circuit has held that "[a]lthough our
decisions on disqualification motions often benefit from guidance
offered by the American Bar Association (ABA) and state disci-
plinary rules, . . . such rules merely provide general guidance
and not every violation of a disciplinary rule will necessarily
lead to disqualification." Hempstead Video, Inc. v. Inc. Vill. of
Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citations
omitted); accord Solow v. Conseco, Inc., 06 Civ. 5988 (BSJ)(THK),
2007 WL 1599151 at *3 (S.D.N.Y. June 4, 2007) (Katz, M.J.).
"Disqualification is only warranted in the rare circumstance
where an attorney's conduct 'poses a significant risk of trial
taint.'"  Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231
(S.D.N.Y. 2010) (Scheindlin, D.J.), quoting Glueck v. Jonathan
Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).  However, "any
doubt [with respect to whether disqualification should be or-
dered] is to be resolved in favor of disqualification." Hull v.
Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975) (citation
omitted); accord Heyliger v. J.D. Collins, No. 3:11-CV-1293
(NAM/DEP), 2014 WL 910324 at *2 (N.D.N.Y. Mar. 10, 2014).

14

In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny.  Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009), citing Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989); accord Schatzki v. Weiser Capital Mgmt., LLC, 10 Civ. 4685, 2013 WL 6189208 at *2 (S.D.N.Y. Nov. 26, 2013) (Sweet, D.J.).  Courts are also reluctant to grant motions to disqualify because they inevitably result in delay and added expense.  Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (disqualification motions "inevitably cause delay" (citation omitted)); D.R.T., Inc. v. Universal City Studios, Inc., 02 Civ. 0958 (BSJ)(JCF), 2003 WL 1948798 at *2 (S.D.N.Y. Apr. 24, 2003) (Francis, M.J.).  For all these reasons, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel . . . ."  Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (Kram, D.J.), citing Gov't of India v. Cook Indus., 569 F.2d 737, 739 (2d Cir. 1978); accord Gurniak v. Emilsen, 12 Civ. 481 (NSR), 2014 WL 349552 at *5 (S.D.N.Y. Jan. 30, 2014) (Román, D.J.).

1.   <u>Advocate-Witness Rule</u>

Effective April 1, 2009, New York adopted the Rules of Professional Conduct ("Rules"), replacing the Code of Professional Responsibility ("Code").  Rule 3.7(a) provides guidance concerning when a lawyer who will also be a witness should be disqualified:

> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> >
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> >
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> >
> > (5) the testimony is authorized by the tribunal.

22 N.Y.C.R.R. § 1200.0 (2009).

Rule 3.7(a) is "[c]ommonly referred to as the 'advocate-witness' rule."  <u>Decker v. Nagel Rice LLC</u>, <u>supra</u>, 716 F. Supp. 2d at 232.  The Second Circuit has

> identified four risks that Rule 3.7(a) is designed to alleviate:  (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she

>has to cross-examine her lawyer-adversary and attempt
>to impeach his credibility; (3) some may fear that the
>testifying attorney is distorting the truth as a result
>of bias in favor of his client; and (4) when an indi-
>vidual assumes the role of advocate and witness both,
>the line between argument and evidence may be blurred,
>and the jury confused.

Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178, citing

Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Work-

ers, 378 F.3d 269, 282-83 (2d Cir. 2004) (internal citations and

alterations omitted).

Rule 3.7(a) "is substantially the same as" Disciplinary

Rule ("DR") 5-102(A) of the Code. Ramchair v. Conway, 601 F.3d

66, 74 n.6 (2d Cir. 2010). Under the Code, different standards

for disqualification applied depending on whether an attorney was

expected to testify on behalf of a client or a party other than

the attorney's client. In Lamborn v. Dittmer, 873 F.2d 522, 531

(2d Cir. 1989), the Second Circuit analyzed DR 5-102(A), which

stated that:

>If, after undertaking employment in contemplated or
>pending litigation, a lawyer learns or it is obvious
>that he or a lawyer in his firm ought to be called as a
>witness on behalf of his client, he shall withdraw from
>the conduct of the trial and his firm, if any, shall
>not continue representation in the trial . . . .

The Court then held that "[t]he test under subdivision (A) is

whether the attorney's testimony could be significantly useful to

his client. If so, he should be disqualified regardless of

whether he will actually be called." Lamborn v. Dittmer, supra, 873 F.2d at 531 (citation omitted).  Courts in this Circuit have stated that "[w]hen considering the necessity of testimony, '[a] court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'" Finkel v. Frattarelli Bros., Inc., 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010), quoting Kubin v. Miller, supra, 801 F. Supp. at 1113  (internal quotation marks and citation omitted).

DR 5-102(B) addressed circumstances in which a lawyer or a member of the lawyer's firm "may be called as a witness other than on behalf of his client;" it provided that the lawyer "may continue the representation until it is apparent that his testimony is or may be prejudicial to his client." Lamborn v. Dittmer, supra, 873 F .2d at 531, quoting DR 5-102(B).  A party bringing a motion under this subsection "carries the burden to show both the necessity of the testimony and the substantial likelihood of prejudice." Ragdoll Prods. (UK) Ltd. v. Wal-Mart Stores, Inc., 99 Civ. 2101 (DLC), 1999 WL 760209 at *2 (S.D.N.Y. Sept. 27, 1999) (Cote, D.J.), citing Nat'l Union Fire Ins. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 281 (S.D.N.Y. 1996) (Kram, D.J.) and Stratavest Ltd. v. Rogers, 903 F. Supp. 663, 667 (S.D.N.Y. 1995) (Sweet, D.J.); see also Acker v. Wilger, 12 Civ.

3620 (JMF), 2013 WL 1285435 at *1 (S.D.N.Y. Mar. 29, 2013)
(Furman, D.J.).

Testimony is deemed prejudicial where it is "suffi-
ciently adverse to the factual assertions or account of events
offered on behalf of the client, such that the bar or the client
might have an interest in the lawyer's independence in discredit-
ing that testimony." Murray v. Metro. Life Ins. Co., supra, 583
F.3d at 178 (inner quotation marks and citation omitted); accord
Acker v. Wilger, supra, 2013 WL 1285435 at *1; Creditsights, Inc.
v. Ciasullo, 05 Civ. 9345 (DAB), 2010 WL 2594038 at *2 (S.D.N.Y.
June 16, 2010) (Batts, D.J.).  The Second Circuit explained that
DR 5-102(B) is implicated "where a lawyer's testimony would
contradict or undermine his client's factual assertions."
Lamborn v. Dittmer, supra, 873 F.2d at 531.  However, "[b]ecause
the courts must guard against tactical use of motions to disqual-
ify counsel . . . they are subject to fairly strict scrutiny,
particularly motions under subdivision (B)."  Lamborn v. Dittmer,
supra, 873 F.2d at 531 (citation omitted).

Applying the foregoing standards here, the Nimkoff Firm
has failed to demonstrate that Tokayer should be disqualified as
RKO's counsel.  RKO has no intention of calling Tokayer as a
witness (see Disqualification Opp'n at 8 ("RKO has no present
intention to call Tokayer as a witness in any manner whatso-

19

ever"); Reply Ecker Decl., Ex. C at 20 ("there is no intention by RKO to call [Tokayer] as a witness or to rely on any deposition testimony or otherwise")).  Hence, because the Nimkoff Firm intends to call Tokayer as a witness, it "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." Lamborn v. Dittmer, supra, 873 F.2d at 531 (inner quotation marks and citations omitted); accord Creditsights, Inc. v. Ciasullo, supra, 2010 WL 2594038 at *2. The Nimkoff Firm must demonstrate "both that the lawyer's testi-mony is 'necessary' and that there exists a 'substantial likeli-hood that the testimony would be prejudicial to the witness-advocate's client,'" here, RKO.  Acker v. Wilger, supra, 2013 WL 1285435 at *1 (citation omitted; emphasis added); see Finkel v. Frattarelli Bros., Inc., supra, 740 F. Supp. 2d at 373; N.Y. Indep. Contractors Alliance, Inc. v. Highway, Rd. & St. Constr. Laborers Local Union 1010, 07-CV-1830 (ERK)(VVP), 2008 WL 5068870 at *3 (E.D.N.Y. Nov. 24, 2008).

　　　　Even assuming the necessity of Tokayer's testimony, the Nimkoff Firm has failed to demonstrate a substantial likelihood of prejudice to RKO.  The Nimkoff Firm focuses mainly on the prejudice it would suffer absent Tokayer's disqualification, and

offers only conclusory or speculative statements with respect to

any prejudice to RKO.  Specifically, the Nimkoff Firm asserts:

>In any event, it is also readily apparent that Mr.
>Tokayer's testimony may, in fact, also be prejudicial
>to RKO, thereby requiring disqualification.  Perkins v.
>Am. Transit Ins. Co., 2011 U.S. Dist. LEXIS 122691, 10
>(S.D.N.Y. Oct. 24, 2011) ("a lawyer is prohibited from
>acting as an advocate when testimony may be prejudicial
>to the lawyer's own client").  Again, the Nimkoff Firm
>asserts that the events surrounding Mr. Tokayer's
>efforts to assist RKO in depriving the Nimkoff Firm of
>its rightful contingency fee, his breach of the escrow
>agreement with the Nimkoff Firm, his unauthorized
>release of the Purported Amended Fee Agreement to Mr.
>Herskowitz, and RKO's subsequent reliance on that
>document, as well as the role he played in effecting
>the settlement in the underlying Boymelgreen Action,
>which forms the very basis for RKO's counterclaims, are
>absolutely critical to a resolution of these issues.
>Thus, it is clear that Mr. Tokayer will be a key wit-
>ness at the trial of this action, and the Nimkoff Firm
>fully intends to examine him regarding these issues.
>As in Perkins, where plaintiff's counsel was disquali-
>fied because of the "substantial possibility of preju-
>dice against Plaintiff . . . as a result of [plain-
>tiff's counsel's] testimony on settlement," as such
>testimony "could effectively defeat [plaintiff's]
>claim," 2011 U.S. Dist. LEXIS 122691 at 9-10, here, Mr.
>Tokayer's testimony could have a similarly negative
>impact on RKO's defenses and counterclaims.

(Reply Memorandum of Law in Further Support of Motion for Dis-

qualification, dated May 10, 2013 (Docket Item 217), at 3-4).

The foregoing assertions fail to specify Tokayer's

projected testimony, how that testimony would conflict with or be

sufficiently adverse to RKO and why there is a substantial like-

lihood of prejudice.  See Acker v. Wilger, supra, 2013 WL 1285435

at *3 (denying motion to disqualify where defendants "fail[ed] even to assert, let alone show, that [plaintiff's counsel's] testimony would differ from Plaintiff's, or that any difference would be substantially prejudicial to Plaintiff, two key components of the disqualification analysis").  Instead, the Nimkoff Firm "invites th[e] court to speculate that if called to testify, [Tokayer] might contradict deposition testimony given by [RKO];" however, the case law is clear that allegations based on conjecture do not suffice.  In re Galaxy Assocs., 114 B.R. 11, 14 (D. Conn. 1990); see Creditsights, Inc. v. Ciasullo, supra, 2010 WL 2594038 at *3 (defendant's reliance on conjecture as to what adversary's counsel might have recalled was "insufficient to . . . create a substantial likelihood of prejudice"); In re Manshul Const. Corp., 97 Civ. 4295 (DAB), 1998 WL 405039 at *4 (S.D.N.Y. July 20, 1998) (Batts, D.J.) ("Courts require a party seeking disqualification of counsel to meet a high standard of proof, and mere speculations will not suffice."); cf. Perkins v. Am. Transit Ins. Co., 10 Civ. 5655 (CM)(RLE), 2011 WL 5051739 at *3 (S.D.N.Y. Oct. 24, 2011) (Ellis, M.J.) (defendant demonstrated "a substantial possibility of prejudice against" plaintiff resulting from plaintiff's counsel's testimony).  There is simply "nothing in the record before the Court to suggest that any potential testimony that [Tokayer] might give wouldn't be pre-

cisely aligned with [RKO's] interests." Ross v. Blitzer, 09 Civ. 8666 (HB), 2009 WL 4907062 at *3 (S.D.N.Y. Dec. 21, 2009) (Baer, D.J.).

I note also "that the concern raised by a disqualification motion under the advocate-witness rule, namely that the party seeking disqualification is 'manufacturing a conflict in order to prevent a defendant from having . . . defense counsel at its side,'" is present here, in light of the Nimkoff Firm's Contempt Motion brought on the basis of a single document that it already had in its possession, and is a factor that I consider, along with all other factors, in connection with the motion for disqualification. United States v. Locascio, 357 F. Supp. 2d 536, 556 (E.D.N.Y. Sept. 28, 2004), quoting Wheat v. United States, 486 U.S. 153, 163 (1988).

For the foregoing reasons, the Nimkoff Firm has failed to "sustain[] the high standard of proof necessary to disqualify opposing counsel" under the attorney-witness rule. Creditsights, Inc. v. Ciasullo, supra, 2010 WL 2594038 at *2 (inner quotation marks and citations omitted).  Notwithstanding, should the case

23

survive summary judgment proceedings,[5] the Nimkoff Firm may renew its application on the basis of new evidence.[6]

### 2.   Conflict of Interest

Rule 1.7 and Canon 5 of the Code prohibit conflicts of interest.  Rule 1.7(a) provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
>> (1) the representation will involve the lawyer in representing differing interests; or
>>
>> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

22 N.Y.C.R.R. § 1200.0 (2009).  Likewise, "Canon 5 of the Code suggests that a lawyer should exercise independent professional judgment on behalf of a client."  Decker v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 233.

---

[5]There are currently three motions for summary judgment pending in this lawsuit (see Docket Items 229, 242 and 247).

[6]Because it is unclear whether the Nimkoff Firm has since deposed Tokayer, as I permitted it to do with respect to limited topics on April 8, 2013 (Reply Ecker Decl., Ex. C at 43, 48), I leave open the possibility of a renewed application on the basis of new evidence that may have been obtained since the filing of the Disqualification Motion.

The Nimkoff Firm argues that Tokayer should be disqualified under Rule 1.7(a) and Canon 5 of the Code because the Nimkoff Firm's state action lawsuit against him creates a conflict of interest.  However, as noted above, the Supreme Court of the State of New York, has dismissed the state court proceeding for failure to state a cause of action.  Moreover, the cases the Nimkoff Firm relies on are inapposite to the present circumstances.  In Decker v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 234-35, the Honorable Shira A. Scheindlin, United States District Judge, disqualified plaintiff's counsel in light of his role as both attorney and a third-party defendant.  There, Judge Scheindlin found it "a near certainty, and not merely speculative, that [plaintiff's counsel] [would] be named as a third-party defendant" in the same proceeding.  Decker v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 235.  Likewise, in Farrell Family Ventures, LLC v. Sekas & Assocs., LLC, 863 F. Supp. 2d 324, 335 (S.D.N.Y. 2012) (Forrest, D.J.), the Honorable Katherine B. Forrest, United States District Judge, granted defendants' motion to assert a third-party claim against plaintiff's counsel and, consequently, disqualified plaintiff's counsel.  These facts are not present here.

Because the Nimkoff Firm has not provided any basis other than the now-dismissed state lawsuit to support its con-

flict of interest claim, this argument also lacks merit.  Accordingly, the Nimkoff Firm's motion to disqualify Tokayer as RKO's counsel is denied in full.[7]

## IV.  Conclusion

For all the foregoing reasons, I deny the Nimkoff Firm's (1) motion for contempt and sanctions, except that Tokayer is ordered to submit an affidavit within seven (7) days as outlined above, and (2) motion for disqualification of Tokayer, without prejudice to its renewal, should the case survive summary judgment.

The Clerk of the Court is directed to close docket items 206 and 212.

Dated: New York, New York
       March 24, 2014

SO ORDERED

_Henry Pitman_

HENRY PITMAN
United States Magistrate Judge

---

[7]In light of my ruling, I need not address Tokayer's argument that his disqualification would cause substantial hardship to his client.

26

Copies transmitted to:

Ronald A. Nimkoff, Esq.
Nimkoff Rosenfeld & Schechter, LLP
Suite 2424
One Pennsylvania Plaza
New York, New York  10119

Zachary G. Schurkman, Esq.
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
150 East 42nd Street
New York, New York  10017

Ira D. Tokayer, Esq.
Law Offices of Ira D. Tokayer, Esq.
7th Floor
405 Lexington Avenue
New York, New York  10174