USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/18/12_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

NIMKOFF ROSENFELD & SCHECHTER,  :
LLP,
                                :
                Plaintiff,
                                :
    -against-
                                :
RKO PROPERTIES, LTD. and FIDELITY
INVESTMENTS,                    :
                                      07 Civ. 7983 (DAB)(HBP)
                Defendants.     :
                                      OPINION, ORDER
----------------------------------X   AND CERTIFICATION
                                      OF FACTS
RKO PROPERTIES, LTD.,           :

        Counterclaim-Plaintiff, :

    -against-                   :

NIMKOFF ROSENFELD & SCHECHTER, LLP :
and RONALD A. NIMKOFF,
                                :
        Counterclaim-Defendants.
                                :
----------------------------------X


        PITMAN, United States Magistrate Judge:


I.  Introduction

        Plaintiff, Nimkoff Rosenfeld & Schechter, LLP ("Nimkoff

Firm"), commenced this action against defendant RKO Properties,

Ltd. ("RKO") to recover legal fees allegedly owed to it for work

performed in a state court proceeding.  RKO has asserted counter-

claims against the Nimkoff Firm and Ronald A. Nimkoff, a partner

at the Nimkoff Firm, (collectively "Nimkoff Parties") for mal-practice.

Discovery is now closed and three applications are pending before me. First, the Nimkoff Parties have moved to compel RKO's attorney Ira D. Tokayer, Esq. to provide a second set of supplemental responses to interrogatory numbers 5, 6, 7 and 8 of the First Set of Interrogatories to Tokayer (Letter from Harris B. Katz, dated Oct. 27, 2016 (Docket Item ("D.I.") 359 ("Nimkoff Motion") at 1-5). The Nimkoff Parties also assert that Tokayer should be held in contempt because his first set of supplemental responses violated my discovery order dated Septem-ber 29, 2016 (Nimkoff Motion at 5, <u>citing</u> Order, dated Sept. 29, 2016 (D.I. 354) ("September 2016 Discovery Order")[1]). Second, Tokayer seeks Rule 11 sanctions against the Nimkoff Parties and their attorneys for filing multiple motions against him (Letter from Anthony J. Proscia, dated Oct. 31, 2016 (D.I. 361) ("Tokayer Motion")). Third, RKO moves to compel the Nimkoff Parties to provide the last known addresses of certain employees of the Nimkoff Firm and a copy of the Nimkoff Firm's partnership agree-ment (Letter from Ira D. Tokayer, dated Jan. 27, 2017 (D.I. 366)

---

[1]The September 2016 Discovery Order memorialized rulings I made on the record during a conference held on September 28, 2016 (<u>See</u> Transcript of Hearing dated Sept. 28, 2016 (D.I. 355) at 7-9).

("RKO Motion")). For the reasons discussed below, the Nimkoff Parties' motion is granted and Tokayer and RKO's motions are denied.

## II. Facts

The facts giving rise to this action are set forth in several prior decisions, familiarity with which is assumed. <u>See Nimkoff Rosenfeld & Schechter, LLP v. RKO Properties, Ltd.</u>, 07 Civ. 7983 (DAB)(HBP), 2014 WL 1201905 at *1 (S.D.N.Y. Mar. 24, 2014) (Pitman, M.J.), <u>objections sustained in part and overruled in part</u>, 2016 WL 3042733 (S.D.N.Y. May 24, 2016) (Batts, D.J.) <u>and</u> 2013 WL 664711 (S.D.N.Y. Feb. 25, 2013) (Pitman, M.J.).

The Nimkoff Firm alleges that RKO failed to pay legal fees owed for its representation of RKO in a proceeding in New York State court entitled <u>RKO Properties v. Shaya Boymelgreen et al.</u>, Index No. 29822/02 (Sup. Ct., Queens Co.) ("the Boymelgreen Action") (Complaint, dated Sept. 11, 2007 (D.I. 1)). RKO settled the Boymelgreen Action in 2007, and the Nimkoff Firm claims that it is entitled to a contingency fee as a result of the settlement. The Nimkoff Firm also seeks declaratory relief against RKO and a non-interested party defendant, Fidelity Investments, the entity holding the contested fee in escrow. RKO has asserted counterclaims against the Nimkoff Parties for legal malpractice

3

and breach of fiduciary duty (Second Amended Answer and Counter-claims and Jury Demand, dated Mar. 28, 2011 (D.I. 87)). RKO asserts that as a result of the Nimkoff Parties' alleged malprac-tice, they have forfeited the right to compensation for their work in the Boymelgreen Action (Second Amended Answer and Coun-terclaims and Jury Demand, dated Mar. 28, 2011 (D.I. 87)). Any additional facts that are relevant to the pending motions are set forth below.

III.  Analysis

    A.  Nimkoff Parties' Motion

       The Nimkoff Parties' motion arises out of Tokayer's representation of RKO in the Boymelgreen Action. As discussed further below, although RKO retained Tokayer to assist in the settlement of the Boymelgreen Action, the Nimkoff Firm remained counsel of record. The parties dispute the nature and extent of Tokayer's subsequent role in RKO's negotiation of an amended fee agreement with the Nimkoff Firm and the settlement of the Boymelgreen Action. In May of 2016, Judge Batts issued an order permitting the Nimkoff Parties to serve interrogatories on Tokayer related to his role in the settlement of the Boymelgreen Action and the facts surrounding a set of documents the parties

4

refer to as the "Escrow Package." See Nimkoff Rosenfeld &
Schechter, LLP v. RKO Properties, Ltd., supra, 2016 WL 3042733 at
*1-*2, *10, *12.  The Nimkoff Parties argue that Tokayer should
be compelled to provide a second set of supplemental interroga-
tory responses and be held in contempt because he has repeatedly
failed to respond to interrogatories inquiring whether he re-
ceived the Escrow Package prior to the commencement of this
action.

### 1.  Failure to Meet and Confer

Tokayer argues that the Nimkoff Parties' motion is
premature because the Nimkoff Parties did not seek to meet and
confer with Tokayer as required by Fed.R.Civ.P. 37(a)(1) prior to
filing this motion.  The Nimkoff Parties argue that there is no
meet and confer requirement for a motion brought pursuant to Rule
45.[2]

---

[2]Although the Nimkoff Parties cite no authority for this
argument, I note that there are cases holding that the Federal
Rules do not impose a "meet and confer" requirement for the
enforcement of a Rule 45 subpoena.  See Travelers Indem. Co. v
Metro. Life Ins. Co., 228 F.R.D. 111, 115 (D. Conn. 2005) (meet
and confer requirement does not apply to motions brought under
Rule 45); Saye v. Old Hill Partners, Inc., 3:03 CV 1071 DJS, 2004
WL 2750319 at *2 (D. Conn. Dec. 1, 2004) ("The court will not
deny [the] pending motions [on the basis of the movant's failure
to meet and confer] because Local Rule 37 does not expressly
state that certification must be provided when seeking relief
(continued...)

Regardless of whether the Nimkoff Parties were required to meet and confer with Tokayer before making their motion, their failure to meet and confer with Tokayer is not a basis for denying the motion because I conclude that a meet and confer would have been futile. As explained below, Tokayer has had three opportunities to answer the interrogatories in issue (including in response to this motion), and in each instance, he has refused to provide clear and direct answers. Ordering the parties to meet and confer at this point would only "further delay . . . resolving these issues on the merits." Time Inc. v. Simpson, 02 Civ. 4917 (MBM)(JCF), 2002 WL 31844914 at *2 (S.D.N.Y. Dec. 18, 2002) (Francis, M.J.) (excusing failure to meet and confer); see also Gibbons v. Smith, 01 Civ. 1224 (LAP), 2010 WL 582354 at *2 (S.D.N.Y. Feb. 11, 2010) (Preska, D.J.) ("relief from the meet-and-confer requirement" is warranted where "any attempt to resolve the dispute informally would have been futile"); Excess Ins. Co., Ltd. v. Rochdale Ins. Co., 05 Civ. 10174, 2007 WL 2900217 at *1 (S.D.N.Y. Oct. 4, 2007) (Sweet, D.J.) ("Courts have excused a failure to meet and confer in situations where to do so would be clearly futile, or exigent time constraints mandate immediate action." (citations omitted)).

---

[2](...continued)
under Rule 45.").

6

I shall, therefore, address the substance of the Nimkoff Parties'
motion.

### 2. Motion to Compel

At the time the Boymelgreen Action was being settled,
RKO retained Tokayer as counsel for the purposes of finalizing
the settlement. Although the Nimkoff Firm remained as counsel of
record, RKO argues that the fee agreement between the Nimkoff
Firm and RKO was modified when Tokayer was retained. The Nimkoff
Parties, however, argue that the fee agreement was not modified
due, in part, to RKO and Tokayer's failure to take certain steps
with respect to the Escrow Package that Mr. Nimkoff asserts he
delivered to Tokayer in July 2007. The Nimkoff parties allege
the following facts:

> 10. On or about July 13, 2007, Mr. Tokayer, in a
> telephone conversation with me, requested that, in
> connection with his role as the lawyer then handling
> all settlement matters on behalf of RKO in the
> Boymelgreen Action, I provide him with certain docu-
> ments relating to that action.
>
> 11. Mr. Tokayer represented that it was his intention
> to, and that he would, hold those documents in escrow
> and not release them to anyone until certain escrow
> conditions were met. . . .
>
> 13. On July 16, 2007, pursuant to his request, I
> forwarded a group of five documents to Mr. Tokayer,
> with a cover letter (the "Escrow Letter") confirming
> Mr. Tokayer's agreement and obligation to hold those
> documents in escrow and not deliver them "to anyone to

7

maintain (including Robert Herskowitz[, a principal of RKO]) unless and until all five documents have been fully executed and fully executed originals of all five documents have been sent back to me." . . .

14. The five enclosures to the Escrow Letter included: (1) Correspondence from me to Mr. Herskowitz dated July 16, 2007, through which the Nimkoff Firm was then prepared to agree to accept a fee calculated on far less than the settlement sum, as a result of Mr. Herskowitz's representations to me (which I later learned were willfully false), that, in order to receive the settlement sum, he had to supply to the defendants in the Boymelgreen Action goods and services having a value well into seven figures (the "Purported Amended Fee Agreement"); (2) Stipulation and Notice of Cancellation of Notice of Pendency; (3) Stipulation Discontinuing Action with Prejudice; (4) my Affirmation dated July 16, 2007; (5) my letter of instructions to Ian Ceresney dated July 16, 2007 (the "Letter of Instructions"). Exhibit D.

15. The Purported Amended Fee Agreement was signed on my behalf and included a blank countersignature line for Mr. Herskowitz. Exhibit D.

16. The Purported Amended Fee Agreement was personally delivered to Mr. Tokayer, to be held in escrow until all five of the documents enclosed with the Escrow Letter were fully executed, and the fully executed originals of all five documents were sent back to me. Exhibit D.

17. The only means by which the Purported Amended Fee Agreement, as signed on my behalf, was distributed by the Nimkoff Firm was as part of the Escrow [Package] delivered to Mr. Tokayer.

18. The Nimkoff Firm never sent the Purported Amended Fee Agreement, as signed on my behalf, to Mr. Herskowitz, or to anyone other than Mr. Tokayer.

19. The Letter of Instructions was signed on my behalf and contained a countersignature line for execution by Mr. Ceresney. However, as I never received back the

Letter of Instructions containing Mr. Ceresney's signa-
ture (and, in connection with this action, Mr. Ceresney
has denied even seeing it), the agreed upon escrow
conditions, were, for among other reasons as well,
never met, and the Purported Amended Fee Agreement was,
therefore, a nullity.

20.   The Purported Amended Fee Agreement as supposedly
executed by Mr. Herskowitz was never provided to the
Nimkoff Firm until it was produced in discovery in this
action.

(Affidavit of Ronald A. Nimkoff in Opposition to the Specific

Objections of Non-Party Ira D. Tokayer, Esq., sworn to on May 20,

2013 (D.I. 225) (emphasis in original); see also Nimkoff

Rosenfeld & Schechter, LLP v. RKO Properties, Ltd., supra, 2016

WL 3042733 at *1-*2; Complaint, dated Sept. 11, 2007 (D.I. 1) ¶

12).

Interrogatory four of the Nimkoff Parties' First Set of

Interrogatories to Tokayer asked whether, prior to the commence-

ment of the action, Tokayer received the Escrow Package, or any

portions thereof (Nimkoff Motion, Ex. E).  In a response dated

July 21, 2016, Tokayer stated that "[s]ubject to and without

waiving the foregoing General Objections, Tokayer does not recall

receiving the purported 'Escrow Package' or any portion thereof"

(Nimkoff Motion, Ex. E).  In interrogatories 5 through 8, the

Nimkoff Parties asked whether Tokayer received each of the

documents that comprised the Escrow Package.  In the same set of

responses, Tokayer objected and stated that "Tokayer incorporates his Response to Interrogatory No. 4" (Nimkoff Motion, Ex. E).

In August 2016, the Nimkoff Parties moved to compel supplemental responses to interrogatories 5 through 8 (Nimkoff Motion, Ex. C), and I granted that request at a conference held on September 28, 2016. My rulings were memorialized in the September 2016 Discovery Order. During the conference, I stated that "Nimkoff is entitled to . . . know whatever [Tokayer] recalls" (Transcript of Hearing dated Sept. 28, 2016 (D.I. 355) at 7). I ruled that Tokayer should "clearly state whether or not he received the escrow package" (Transcript of Hearing dated Sept. 28, 2016 (D.I. 355) at 7).

Tokayer's supplemental responses to interrogatories 5 through 8 are identical. He states objections and then provides the following response: "Tokayer does claim he did not receive it; only that he does not recall receiving it prior to this instant action [sic]" (Nimkoff Motion, Ex. F).

Tokayer's second supplemental responses fail to comply with my September 2016 Discovery Order because it is not clear from those responses whether Tokayer is asserting that he never received the Escrow Package or its contents or that he did not receive the Escrow Package prior to the instant action or that he does not know when he first received the Escrow Package or its

contents. In the first clause of his supplemental response regarding each document in the Escrow Package, Tokayer makes the unconditional statement that "he did not receive" the documents (Nimkoff Motion, Ex. F). However, in the second clause of the response, Tokayer states "only that he does not recall receiving [them] prior to this instant action" (Nimkoff Motion, Ex. F). These contradictory responses are also inconsistent with Tokayer's response to interrogatory four, which states that "Tokayer does not recall receiving the purported 'Escrow Package' or any portion thereof." In the aggregate, Tokayer's responses are meaningless gibberish and provide no useful information.

Tokayer's letter in opposition to the Nimkoff Parties' contempt motion is similarly unhelpful. Rather than attempt to explain his inconsistent statements, Tokayer claims that "[t]here can be no further elaboration by Tokayer beyond that he 'does not recall receiving' the documents" (Tokayer Motion at 3). Tokayer's letter does not address the first clause of his supplemental responses in which Tokayer claims that "he did not receive" the documents that made up the Escrow Package. Tokayer cannot have it both ways -- he must clarify whether he does not recall receiving the documents prior to the commencement of the action or whether he is claiming that his memory is clear that he did not receive the Escrow Package or its contents at all, either

11

prior to or after the commencement of the action.[3]  Tokayer has failed to comply with my discovery order.

Accordingly, the Nimkoff Parties' motion to compel Tokayer to provide supplemental responses is granted.  However, instead of a second set of supplemental responses to the interrogatories posed by the Nimkoff Parties, no later than seven days from the date of this Order, Tokayer is to respond in writing and under oath (or under penalty of perjury pursuant to 28 U.S.C. § 1746) to the following questions:

> 1.  Do you recall ever receiving the Escrow Package or any part thereof prior to the date of this Order?
>
> 2.  If you admit that you received the Escrow Package or any part thereof prior to the date of this Order, which parts did you receive and when did you first receive each part?

---

[3]The Nimkoff Parties have accurately summarized the confusion created by Tokayer's responses:

> It is still entirely unclear as to whether Mr. Tokayer is claiming that he did receive some, or all, of the referenced documents [in the Escrow Package] prior to the commencement of this action, but does not recall how he received them, or if he is claiming that he never received any of the referenced documents prior to the commencement of this action.  It is also still entirely unclear as to when Mr. Tokayer first recalls being in possession of any such document(s), if at all, prior to the commencement of this action.

(Nimkoff Motion at 4).

3. Motion for Contempt

   In the absence of the parties' consent to a magistrate
judge's exercising plenary jurisdiction pursuant to 28 U.S.C. §
636(c), a magistrate judge can neither grant nor deny a motion
for contempt. As explained by the Honorable John G. Koeltl,
United States District Judge, a magistrate judge's role with
respect to such a motion is limited by 28 U.S.C. § 636(e)(6) to
certifying or declining to certify the facts as constituting
contempt:

> [28 U.S.C. § 636(e)(6)] provides that a United States
> Magistrate Judge shall, in a case other than one over
> which the magistrate judge presides with the consent of
> the parties under 28 U.S.C. § 636(c) or a misdemeanor
> case proceeding before the magistrate judge under 18
> U.S.C. § 3401, certify facts constituting civil con-
> tempt to the district judge. See 28 U.S.C. §
> 636(e)(6)(A), (e)(6)(B)(iii). The magistrate judge may
> also issue an order requiring the individual found to
> have committed the acts in question to show cause
> before the district court why the individual should not
> be adjudged in contempt of court. See 28 U.S.C. §
> 636(e)(6).
>
> Where the magistrate judge has certified facts
> constituting contempt, the district court must make an
> independent determination of the facts certified and
> consider any additional evidence. See 28 U.S.C. §
> 636(e)(6). The determination of whether the conduct
> constitutes contempt and, if so, what sanctions are
> appropriate are left to the discretion of the district
> court. 28 U.S.C. § 636(e)(6)(B).

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade

Servs., Inc., 03 Civ. 5562 (JGK)(AJP), 2006 WL 1148110 at *1

(S.D.N.Y. Apr. 28, 2006); see also Servaas Inc. v. Republic of
Iraq, 09 Civ. 1862 (RMB), 2013 WL 5913363 at *2 (S.D.N.Y. Nov. 4,
2013) (Berman, D.J.); Hunter TBA, Inc. v. Triple V Sales, 250
F.R.D. 116, 117-18 (E.D.N.Y. 2008).

I hereby certify the facts set forth in the preceding
section as correct.

Notwithstanding Tokayer's failure to provide the
information sought by the Nimkoff Parties, I do not recommend
that he be held in contempt at this time. Rather, I recommend
that, if he fails to provide clear and unequivocal answers to the
questions set forth on page 12, above, within seven days of the
date of this Order, the Court issue an Order directing Tokayer to
show cause why he should not be held in contempt.

A finding of contempt is a particularly serious matter
for an attorney. It ordinarily must be disclosed on any applica-
tion for admission pro hac vice, and it can be expected to be
cited against the attorney in any future discovery disputes. In
short, it follows an attorney throughout his or her career.

In addition, upon a finding of civil contempt, a court
is limited to coercive and compensatory remedies; a punitive
sanction is not available. CBS Broad. Inc. v. FilmOn.com, Inc.,
814 F.3d 91, 101 (2d Cir. 2016); Paramedics Electromedicina
Comercial, Ltda. v. GE Medical Systems Information Technologies,

Inc., 369 F.3d 645, 657 (2d Cir. 2004). The Nimkoff Parties

offer no evidence of loss; thus, if Tokayer were held in con-

tempt, the Court could only impose a sanction that was geared

toward compelling Tokayer to provide the information sought. To

the extent it is necessary to coerce Tokayer to comply with the

discovery request, the threat of having to show cause why he

should not be held in contempt (and the possible consequences of

a finding of contempt) should be sufficient in the first in-

stance.

B.  Tokayer's Motion

Tokayer asserts that sanctions pursuant to Fed.R.Civ.P.

11 should be imposed on the Nimkoff Parties and their attorneys

for filing several "baseless" motions against Tokayer and for

filing a lawsuit against Tokayer that has been dismissed (Tokayer

Motion at 4).

As an initial matter, Tokayer, as a non-party, lacks

standing to seek Rule 11 sanctions in this action.  See New York

News, Inc. v. Kheel, 972 F.2d 482, 486 (2d Cir. 1992) (non-party

attorney did not have right to intervene in action for purpose of

seeking Rule 11 sanctions).

Further, even if Tokayer had standing, his motion would

have to be denied because he has failed to comply with Rule 11's

15

safe harbor provision. Rule 11 contains a "safe harbor" provi-
sion which requires that any motion served under the rule "must
not be filed or be presented to the court if the challenged
paper, claim, defense, contention, or denial is withdrawn or
appropriately corrected within 21 days after service or within
another time the court sets." Fed.R.Civ.P. 11(c)(2). Thus, a
party charged with a violation of Rule 11 effectively must be
given 21 days to withdraw the offending submission. "A motion
that fails to comply with the safe harbor provision of Rule 11
must be denied." Castro v. Mitchell, 727 F. Supp. 2d 302, 306
(S.D.N.Y. 2010) (Gorenstein, M.J.); see also Rojas v. Schkoda,
319 F. App'x 43, 44 (2d Cir. 2009) (summary order); Bryant v.
Britt, 420 F.3d 161, 163 n.2 (2d Cir. 2005); Perpetual Sec., Inc.
v. Tang, 290 F.3d 132, 142 (2d Cir. 2002). Tokayer offers no
evidence that he served his motion on the Nimkoff Parties more
than twenty-one days before filing it with the Court. Tokayer's
motion is, therefore, denied.

C.  RKO's Motions

        1.  Motion to Compel:
            Witness Contact Information

        RKO's motion to compel the Nimkoff Parties to produce
the last-known addresses of the Nimkoff Firm's bookkeeper and

16

secretary is denied because RKO first made the request after the discovery deadline had passed.

In my September 2016 Discovery Order, I noted that discovery was closed and that "no additional discovery requests may be served" (September 2016 Discovery Order, ¶ 8). Nonetheless, RKO first requested this information at Ronald A. Nimkoff's deposition on October 7, 2016.[4] Therefore, RKO's motion for this discovery is denied as untimely.

2. Motion for Reconsideration:
   Nimkoff Partnership Agreement

RKO's motion to compel the Nimkoff Parties to produce the Nimkoff Firm's partnership agreement is a belated attempt to seek reconsideration of my July 29, 2016 Order denying RKO's request for this same document (see Order, dated July 29, 2016 (D.I. 335) ("July 2016 Discovery Order") ¶ 14).[5] As such, the motion is denied because it is untimely and because RKO has not

---

[4]RKO argues that its requests are timely because "the depositions of Mr. Nimkoff and Mr. Rosenfeld were noticed, scheduled and ordered while discovery was still open and the narrow and discrete requests which are the subject of this letter to which we are entitled are a direct outgrowth therefrom" (RKO Motion at 2). RKO's argument has no merit. A deposition that is taken after the discovery deadline is not a vehicle for a party to make untimely requests for additional discovery.

[5]The July 2016 Discovery Order memorialized rulings I made on the record during an in court conference (see Transcript of Hearing, dated July 27, 2016 (D.I. 337) at 81-86).

cited any legitimate basis to justify reconsideration of the July
2016 Discovery Order.

Motions for reconsideration are appropriate only under
limited circumstances. Local Civil Rule 6.3 requires that a
motion for reconsideration must be served within 14 days after
the entry of the decision in issue. Furthermore, as explained by
the late Honorable Peter K. Leisure, United States District
Judge, in Davidson v. Scully, 172 F. Supp. 2d 458, 461-62
(S.D.N.Y. 2001):

> A motion for reconsideration may not be used to
> advance new facts, issues or arguments not previously
> presented to the Court, nor may it be used as a vehicle
> for relitigating issues already decided by the Court.
> See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d
> Cir. 1995). A party seeking reconsideration "is not
> supposed to treat the court's initial decision as the
> opening of a dialogue in which that party may then use
> such a motion to advance new theories or adduce new
> evidence in response to the court's rulings." Polsby
> v. St. Martin's Press, Inc., No. 97 Civ. 690, 2000 WL
> 98057, at *1 (S.D.N.Y. Jan 18, 2000) (Mukasey, J.).
> Thus, a motion for reconsideration "is not a substitute
> for appeal and 'may be granted only where the Court has
> overlooked matters or controlling decisions which might
> have materially influenced the earlier decision.'"
> Morales v. Quintiles Transnational Corp., 25 F. Supp.
> 2d 369, 372 (S.D.N.Y. 1998) (citations omitted).

See also Torres v. Carry, 672 F. Supp. 2d 346, 348 (S.D.N.Y.
2009) (Marrero, D.J.); Mahmud v. Kaufmann, 496 F. Supp. 2d 266,
269-70 (S.D.N.Y. 2007) (Conner, D.J.).

18

"A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Quinn v. Altria Grp., Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1 (S.D.N.Y. Aug. 1, 2008) (Swain, D.J.), citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); accord In re 650 Fifth Ave. and Related Properties, 08 Civ. 10934 (KBF), 2014 WL 3744404 at *1 (S.D.N.Y. July 28, 2014) (Forrest, D.J.), aff'd sub nom., Havlish v. Hegna, 673 F. App'x 34 (2d Cir. 2016) (summary order), petition for cert. filed, No. 17-306 (Aug 24, 2017). "These limitations serve to ensure finality and to prevent losing parties from using motions for reconsideration as a vehicle by which they may then plug the gaps of a lost motion with additional matters." In re City of New York, as Owner & Operator of M/V Andrew J. Barberi, CV-03-6049 (ERK)(VVP), 2008 WL 1734236 at *1 (E.D.N.Y. Apr. 10, 2008),

19

citing <u>Zoll v. Jordache Enters. Inc.</u>, 01 Civ. 1339 (CSH), 2003 WL 1964054 at *2 (S.D.N.Y. Apr. 24, 2003) (Haight, D.J.); <u>accord</u> <u>Cohn v. Metro. Life Ins., Co.</u>, 07 Civ. 0928 (HB), 2007 WL 2710393 at *1 (S.D.N.Y. Sept. 7, 2007) (Baer, D.J.).

RKO's motion for reconsideration suffers from multiple defects. First, it is untimely. The motion was filed on January 27, 2017, six months after I issued the July 2016 Discovery Order denying RKO's motion to compel disclosure of the partnership agreement and far outside the 14-day time limit. <u>See</u> S.D.N.Y. Local Civil Rule 6.3.

Second, RKO's motion is defective because RKO has not identified any intervening change of controlling law, new evidence, need to correct a clear error or prevent manifest injustice that would justify reconsideration of the prior order. Rather, RKO's arguments in favor of reconsideration are an attempt to advance new facts, issues and arguments that were not previously presented. At the July 27, 2016 conference, RKO argued, without success, that the partnership agreement was relevant because it could shed light on whether the Nimkoff Firm had standing to maintain this lawsuit (Transcript of Hearing, dated July 27, 2016 (D.I. 337) at 81-85). In RKO's most recent motion, RKO cites to Nimkoff partner Shimon A. Rosenfeld's statement that the "partnership at [the Nimkoff Firm] was nothing

20

more than an expense sharing arrangement" (Affidavit of Shimon A. Rosenfeld, Esq., sworn to on Sept. 19, 2016 (D.I. 366-4) ¶ 5). RKO asserts that Rosenfeld's assertion calls into question the validity of the partnership agreement and that RKO may be able to use the document to assert additional defenses in this action or affirmative claims against the Nimkoff Parties (RKO Motion at 1-2). Thus, RKO's motion does exactly what a motion for reconsideration cannot do -- it relies on different facts and alternative arguments to seek reconsideration of the July 2016 Discovery Order. RKO's belated motion for reconsideration is, therefore, denied.

## IV.  Conclusion

Accordingly, for all the foregoing reasons, (1) the Nimkoff Parties' motion to compel supplemental interrogatory responses from Tokayer (D.I. 359) is granted; (2) I certify the facts set forth above in Section III(A)(2) as accurate; (3) Tokayer's motion for Rule 11 sanctions against the Nimkoff Parties (D.I. 361) is denied and (4) RKO's motion to compel and for reconsideration (D.I. 366) is denied. The Clerk of the Court is respectfully requested to mark Docket Items 359 and 366 closed.

I further recommend that if, within seven (7) days of the date of this Order, Tokayer fails to provide written answers under oath (or under penalty of perjury pursuant to 28 U.S.C. § 1746) as directed above in Section III(A)(2), that your Honor issue an Order directing Tokayer to show cause why he should not be held in contempt.

Dated:    New York, New York
          September 18, 2017

                                    SO ORDERED

                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

All counsel